**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Daniel T. MORAN,**
**Defendant–Appellant.**

**No. 87–1636.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1988.

Decided April 14, 1988.

John R. O'Brien, Chicago, Ill., for defendant-appellant.

Barbara F. Lazarus, Asst. U.S. Atty., Anton R. Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and POSNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Following his indictment on seven counts of various firearms offenses, Dr. Daniel Moran pled guilty to two of the counts. He entered a plea of guilty to Count Six, which charged him with possession of three unregistered machine guns and an unregistered pistol silencer in violation of 26 U.S.C. § 5861(d), and entered a conditional plea of guilty to Count Two, which charged him with the use of a firearm, a pipe bomb, during the commission of "a crime of violence" in violation of 18 U.S.C. § 924(c). Moran's plea on Count Two was conditioned on a finding of federal jurisdiction over the "crime of violence" element of the charge. The district court found the requisite jurisdiction and sentenced Moran to a five-year consecutive sentence on each count and ordered him to pay restitution of approximately $17,000 to the insurer of the property damaged by the pipe bomb. On appeal Moran challenges the disposition of both counts. He argues that the district court did not have jurisdiction over the offense charged in Count Two and that it improperly considered disputed matters in the presentence report when imposing sentence under Count Six, 663 F.Supp. 19. We reject these arguments and affirm.

I

These convictions arose out of behavior the district court aptly characterized as irrational and out of the norm for any member of society, let alone someone with the defendant dentist's education and background. (R. 71 at 41–42). The stipulated evidence reveals that a minor car accident sixteen years ago provided Moran with a motive for his unreasonable and dangerous acts. The accident occurred in May 1972 when Moran was a student at Northern Illinois University. While making a turn at an intersection, the car driven by a fellow student, Steven Whitney, struck Moran, who was not injured by the collision, but in the physical altercation that ensued between Moran, Whitney and a passenger in Whitney's car, Moran dislocated his shoulder.

Eleven years passed without incident, then in April 1983 someone shot out windows of the Whitney family's Chicago residence with a pellet gun. One year later, in March 1984, someone ignited a pipe bomb at the front porch of the residence, breaking windows and damaging the exterior of the home. Twenty minutes after this explosion, Steven's wife Carol Whitney received a threatening telephone call from an anonymous male. In January 1985, someone again shot out a number of windows of the residence with a pellet gun. Then in the early morning of August 15, 1985, defendant ignited a pipe bomb near the front entrance of the home. The explosion caused approximately $17,000 in damages.

Exactly one year later, an anonymous caller telephoned Whitney at work and stated, "Happy anniversary, Steve. Boom." Agents traced the telephone call to the Glen Ellyn, Illinois, residence of Frederick Marshall. Marshall subsequently admitted that Moran told him about his grudge with Whitney dating back to the 1972 altercation and described to Marshall how he had constructed the 1985 pipe bomb and used it to bomb the Whitney home. Marshall also admitted that he made the anniversary telephone call at the request of his friend, the defendant dentist. Marshall further informed the agents that Moran kept a newspaper clipping and videotaped television news coverage about the 1985 bombing of the Whitney home.

Marshall cooperated with the investigating agents and during an August 27, 1986, taped telephone conversation defendant again told Marshall that he had constructed the pipe bomb used in the second bombing of the Whitney home, and a few days later defendant gave further information to Marshall about the bomb construction. The agents obtained a federal search warrant and recovered various firearms and the videotape of the television news coverage and newspaper clippings from defendant's Glen Ellyn residence. When he was arrested, defendant was carrying Whitney's business

card listing his name, address and telephone number.

The stipulation also disclosed the following facts relevant to the determination of federal jurisdiction. At the time the bombing occurred Whitney was a vice president of Indusco, Inc., a Chicago concern distributing alumina ceramics for heavy industry throughout the country. In December 1982, Indusco purchased a personal computer and related equipment that in August 1985, when the second bombing occurred, was located in Whitney's residence. At that time, Whitney used the computer, on the average, four to five hours per week for business; this time accounted for approximately ninety percent of the computer's usage. As part of the business conducted in his home, Whitney prepared spreadsheets on the computer to determine whether Indusco was receiving a fair price on materials that it purchased from its principal supplier in Latrobe, Pennsylvania. As a result of this work, Indusco negotiated a better price on materials it purchased from that supplier and realized a savings in August 1985 of $7,500. The stipulation also states that Whitney made a number of interstate telephone calls from his home to further Indusco's business. Finally, the residence used natural gas for heat and hot water, all of which came from out-of-state sources via an interstate pipeline, and was insured by an interstate insurance carrier.

## II

The principal question presented by defendant is whether the district court had jurisdiction over Count Two, the use of a firearm during the commission of a "crime of violence" in violation of 18 U.S.C. § 924(c). Jurisdiction under § 924(c) is derived from jurisdiction over a predicate offense, the "crime of violence." In order to have jurisdiction over the § 924(c) count, the court must have proper jurisdiction over the predicate offense.

The predicate offense charged in Moran's case is the offense charged in Count One of the indictment, violation of 18 U.S.C. § 844(i). The relevant portion of § 844(i) provides as follows:

Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, *any building*, vehicle, or other real or personal property *used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned for not more than ten years or fined not more than $10,000, or both (emphasis supplied).

Defendant contends that jurisdiction under § 844(i) was improper because the Whitney residence was not a building used in or affecting interstate commerce.

In stating his argument, the defendant principally relies upon *United States v. Mennuti*, 639 F.2d 107 (2d Cir.1981). This reliance is misplaced. The court in *Mennuti* dismissed an indictment under § 844(i) because it held that private dwelling houses not used for any commercial purpose would not support jurisdiction. *Id.* at 111–112. Although the court also stated that such interstate contacts as the use of out-of-state building materials in its construction, financing or insurance provided by banks or companies engaged in interstate commerce, or the receipt of electric power and telephone service from companies engaged in or affecting commerce would not provide jurisdiction either, *id.* at 109–110, the holding applies only to private dwellings that are not used for any commercial purpose at all. *Id.* at 111–112.

The Whitney residence does not fall within this narrow holding. The stipulated facts clearly establish that through the use of the business computer for business purposes and the interstate business telephone calls, the residence was used in part for commercial purposes. This commercial activity readily distinguishes *Mennuti*. See *United States v. Barton*, 647 F.2d 224, 232 n. 8 (2d Cir.1981). Because *Mennuti* is distinguishable, we need not, and do not, reject it as the government has requested (Br. 14). But cf. *United States v. Patterson*, 792 F.2d 531, 535 (5th Cir.1986) (expressing doubt as to the continuing vitality of *Mennuti*).

■ Looking beyond *Mennuti* to the language of the statute, it refers to "any

building ... used in interstate ... commerce or in any activity affecting interstate or foreign commerce." Congress intended to give the term "affecting interstate or foreign commerce" the "fullest jurisdictional breadth constitutionally permissible under the Commerce Clause." H.R.Rep. No. 91–1549, 91st Cong., 2d Sess. 70 (1970), U.S.Code Cong. & Admin.News 1970, pp. 4007, 4046. Although the government's far-reaching assertion at oral argument that the use of out-of-state nails in the construction of a private residence would establish jurisdiction tests the limits of the Commerce Clause, the facts of this case do not. The use of the personal computer, owned by a company engaged in interstate commerce, in an activity affecting interstate commerce, combined with the interstate business telephone calls, keep the Whitney residence well within the bounds of the Commerce Clause. See also *United States v. Russell*, 738 F.2d 825 (7th Cir. 1984), affirmed, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (applying Section 844(i) to residential buildings rented to tenants). It is immaterial that the effect on interstate commerce was arguably *de minimis*. *United States v. Sweet*, 548 F.2d 198, 202 (7th Cir.1977), certiorari denied, 430 U.S. 969, 97 S.Ct. 1653, 53 L.Ed.2d 361.

In our view, the computer and telephone usages for business purposes are sufficient to bring this case within the scope of Section 844(i). We do not construe Section 844(i) to reach private homes where no business activity occurs, and there is no need to consider the government's alternate argument that Section 844(i) applies here because this residence received natural gas from an interstate pipeline.

### III

■ Defendant also contends that his sentence under Count Six should be vacated and the cause remanded for resentencing because the district court failed to comply with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure.[1] Rule 32(c)(3)(D) provides that if the defendant or defendant's counsel alleges any inaccuracies in the presentence investigation report, the court shall either (1) make a finding as to the allegation or (2) make a determination that no such finding is necessary because the matter controverted will not be taken into account. The rule further provides that a written record of such finding or determination shall be appended to and accompany any copy of the presentence report thereafter made available to the Bureau of Prisons or the Parole Commission.

The provisions of the rule serve a dual purpose. *United States v. Eschweiler*, 782 F.2d 1385, 1387 (7th Cir.1986). The first requirement protects the defendant's due process right to fair sentencing procedures, particularly the right to be sentenced on the basis of accurate information. The second requirement provides a clear record of the disposition and resolution of controverted facts in the presentence report that aids appellate courts in their review of the sentencing hearings and administrative agencies, such as the Bureau of Prisons and Parole Commission, that use the report in their own decision-making procedures. *Id.*

In this case both Moran and his counsel strenuously objected, in writing and in statements before the court, to elements of the presentence report. Their strongest objection was to the characterization of Moran's conduct as "terrorism" of the Whitney family over a period of years. Moran is correct in his assertion that these allegations of inaccuracies triggered the requirements of Rule 32(c)(3)(D), but he is incorrect in his assertion that the district court did not make a finding as to the allegations.

---

1. Alleged inaccuracies in the presentence report only affected sentencing under Count Six. Judge Aspen had discretion under Count Six to impose up to the maximum penalty allowed under 26 U.S.C. § 5871 for violations of 18 U.S.C. § 841 and 26 U.S.C. § 5861(d), *i.e.*, not more than ten years imprisonment or a $10,000 fine. However, under Count Two, Judge Aspen had no discretion. Violations of the pertinent part of 18 U.S.C. § 924(c) carry a mandatory sentence of five years imprisonment. Any violations of Rule 32(c)(3)(D) could possibly affect only the sentence under Count Six where defendant was given a five-year sentence rather than the ten-year maximum.

Judge Aspen did not make a formal written finding. However, our review of the transcript of the sentencing hearing reveals that he clearly stated, before the defendant and his counsel and on the record, that he was accepting the controverted matters in the report unless the defendant presented evidence to show that they were false or not credible. (R. 71 at 4–5). He then offered the defendant as much time as he needed to present witnesses to rebut any facts in the presentence report he thought were erroneous. (R. 71 at 7). The judge again clearly stated that the sentence was going to be based on the totality of the defendant's background and include everything in the presentence report unless the defendant demonstrated any factual errors. (R. 71 at 7). Following a brief recess, defense counsel indicated that he would proceed without presenting any additional witnesses or evidence. (R. 71 at 8–9). The hearing continued and, in accordance with his earlier statements, Judge Aspen took the controverted matter into account when he imposed sentence. (R. 71 at 43–45).

Judge Aspen clearly found against Moran on the controverted matters, but uncovering this finding required this Court's review of the record. District courts are again reminded that "[f]aithful adherence to the straightforward procedural requirements [of Rule 32(c)(3)(D)] will spare all levels of the judiciary the time and effort of revisiting criminal sentences, the finality of which should be settled at the time they are imposed." *Blake v. United States,* 841 F.2d 203, 207 (7th Cir.1988). By allowing the sentence to stand we in no way depart from our position in *Blake* that "the procedures mandated by Rule 32(c)(3)(D) are not discretionary but are, in fact, *mandatory.*" *Id.* (emphasis in original). The sentence in this case is being affirmed because the district judge made the necessary finding.

■ Finally, as to the failure of the district court to attach a written record of the finding to the presentence report, this is a ministerial matter that has already been remedied. The United States Attorney has already instructed the Probation Office to attach the transcript of the sentencing proceeding to the presentence report. (App. 4 to Government Brief). Attachment of the sentencing transcript satisfies the Rule's goal of providing the Bureau of Prisons and the Parole Commission with a complete record to use in their decision-making process. *Eschweiler,* 782 F.2d at 1390; *Andrews v. United States,* 817 F.2d 1277, 1280 n. 4 (7th Cir.1987); *United States v. Hill,* 766 F.2d 856, 859 (4th Cir.1985). Resentencing is unnecessary.

Judgment of convictions affirmed.