UNITED STATES of America, Plaintiff–Appellee,

v.

Frank D. MONACO, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Daniel MONACO, Jr., Defendant–Appellant.

Nos. 87–1011, 87–1013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 13, 1988.

Decided July 26, 1988.

J. Toney, Toney & Trivellini, Woodland, Cal., Malcolm Segal and James R. Kirby, II, Segal & Kirby, Sacramento, Cal., for defendants-appellants.

David F. Levi, U.S. Atty., and George L. O'Connell, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before ALDISERT,[*] ALARCON and HALL, Circuit Judges.

ALARCON, Circuit Judge:

Frank D. Monaco and Daniel Monaco, Jr. have appealed from the judgment entered following their pleas of guilty. They do not challenge the validity of their pleas. Instead, they contend that the district court erred prejudicially in its conduct of sentencing proceedings.

In resolving one of the issues in this appeal, we must decide for the first time whether a district court has the discretion to grant or deny an evidentiary hearing whenever a defendant challenges the accuracy of a statement in a presentence report.

## I.

## PERTINENT FACTS

Frank Monaco founded Golden Plan of California, Inc. (Golden Plan) in 1974. Golden Plan operated as a broker of loans secured by real property. On September 1, 1981, Frank Monaco sold Golden Plan to his brother, Daniel Monaco. On January 28, 1982, Golden Plan closed its doors. In February 1982, an involuntary bankruptcy petition under Chapter 11 was filed against Golden Plan.

On March 29, 1985, a federal grand jury returned an eighty-nine count indictment against Frank Monaco and Daniel Monaco. Also named in the indictment were Samuel Monaco, Gregory Monaco, Denise Monaco, Tony Monaco, and Donald Sapronetti. The indictment alleged conspiracy to commit mail fraud, mail fraud, causing stolen securities to be transported in interstate commerce, concealment of documents, perjury before a grand jury and causing an act to be done. The charges arose out of a scheme to defraud investors which allegedly took place from February 1977 until January 28, 1982. The defendants were accused of inducing investors to make secured loans by falsely describing a property and inflating its value. As a result of the false representations, these loans were undersecured. Thus, when Golden Plan went bankrupt, the investors lost large sums of money.

Frank Monaco was charged in the indictment with one count of conspiracy to commit mail fraud and fifty-one separate counts of mail fraud. Daniel Monaco was charged with one count of conspiracy to commit mail fraud, thirty-three counts of mail fraud, one count of making a false statement to a bank, one count of concealment of documents in contemplation of bankruptcy, and one count of perjury before the grand jury.

On July 18, 1986, Frank Monaco pleaded guilty to the conspiracy charge and one count of tax evasion. On that same day, Gregory Monaco pleaded guilty to one count of mail fraud and one count of tax evasion, Tony Monaco pleaded guilty to one count of mail fraud, and Donald Sapronetti pleaded guilty to one count of mail fraud. On August 12, 1986, Daniel Monaco pleaded guilty to one count of mail fraud and Denise Monaco pleaded guilty to one count of concealing company records from a bankruptcy court. Samuel Monaco had previously pleaded guilty to three felony charges in September 1985. All of the pleas were entered pursuant to plea agreements.

Sentencing for all defendants, except Denise Monaco, was scheduled for October 14, 1986. Denise Monaco's sentencing was scheduled for October 20, 1986. Because of various delays, sentencing did not take place until January 1987.

In mid-October 1986, the defendants and the Government received individual presen-

---

[*] Honorable Ruggero J. Aldisert, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

tence reports from the United States Probation Office. Frank Monaco filed a number of objections to his report with the Probation Office. After two meetings between Frank Monaco and the Probation Office, during which the objections were discussed, corrections were made to the report and it was reissued in November 1986.

On December 2, 1986, the Government filed a sentencing memorandum. The Government attached a book of exhibits to this memorandum, seeking to establish the individual responsibility of Frank Monaco and Daniel Monaco for the losses due to the conspiracy, mail fraud, and tax evasion counts.

On December 30, 1986, both Frank Monaco and Daniel Monaco filed objections in the district court to their presentence reports. At this time, both defendants asked the court to hold an evidentiary hearing regarding their objections. Frank Monaco also filed a sentencing memorandum and a response to the Government's sentencing memorandum.

On January 6, 1987, the district court sentenced Frank Monaco, Gregory Monaco, Daniel Monaco and Donald Sapronetti. Gregory Monaco was sentenced to prison for two years for tax evasion and for five years for mail fraud, the sentences to run consecutively. Donald Sapronetti was sentenced to two years in prison for mail fraud.

Daniel Monaco's request for an evidentiary hearing was denied. The district court held that the presentence report did not contain any factual inaccuracies. Daniel Monaco was sentenced to five years in prison for mail fraud.

The district court overruled Frank Monaco's objections to his presentence report. The request for an evidentiary hearing was denied. The court held that there were no factual inaccuracies in the report. Frank Monaco was sentenced to consecutive five-year prison terms for tax evasion and for conspiracy to commit mail fraud. He was also fined $10,000 on each count.

Samuel Monaco was sentenced on February 25, 1986 to a total of ten years in prison. Denise Monaco was sentenced on January 12, 1987 to five years probation and 500 hours community service. On January 12, 1987, Tony Monaco was sentenced to five years probation and ordered to pay $43,927 in restitution.

## II.

## QUESTIONS ON APPEAL

In this consolidated appeal, Frank Monaco and Daniel Monaco, Jr., present the following questions:

(1) Whether the trial judge abused his discretion when he refused to recuse himself from imposing sentence on Frank Monaco.

(2) Whether the district court abused its discretion when it refused to grant Frank Monaco's request for an evidentiary hearing so that he could examine witnesses and rebut the alleged inaccuracies in his presentence report.

(3) Whether the district court imposed a mechanical sentence on all the defendants in this action, without considering individual characteristics or culpability.

(4) Whether the district court abused its discretion when it denied Daniel Monaco's request for an evidentiary hearing on the issue of whether the federal prison system had the necessary facilities to treat his medical problems adequately.

## III.

## FRANK MONACO'S APPEAL

A. *Recusal*

In his motion to correct his presentence report, Frank Monaco suggested that the trial judge should consider recusing himself because he had reviewed an overwhelming amount of "prejudicial and conclusory material provided by the government...." In making the suggestion, Frank Monaco stated that the request was "not in the belief that the court has any preexisting animosity to the defendant or prejudice against him." The trial judge refused to recuse himself.

Before this court, Frank Monaco argues that the refusal of the trial judge to recuse himself was reversible error because he had reviewed material in sentencing four codefendants on the same day. Frank Monaco also asserts that the record shows that trial judge's bias against him surfaced during the sentencing of one of his codefendants and during his own sentencing. We disagree.

We have held that "[w]e will reverse a district court's denial of a motion for recusal only if the decision was an abuse of discretion." *United States v. Branco*, 798 F.2d 1302, 1304 (9th Cir.1986).

28 U.S.C. § 455(a) (1982) states that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "The alleged prejudice must result from an extrajudicial source...." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir.1986). "Parties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." *United States v. Frias–Ramirez*, 670 F.2d 849, 853 n. 6 (9th Cir.), *cert. denied*, 459 U.S. 842, 103 S.Ct. 94, 74 L.Ed.2d 86 (1982). "An exception to that rule is made when a judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Hamm v. Members of Bd. of Regents of State of Florida*, 708 F.2d 647, 651 (11th Cir.1983).

■ We have reviewed the record and the transcripts of the sentencing hearings in this case. The trial judge did not abuse his discretion in refusing to recuse himself. The trial judge's statements concerning Frank Monaco did not emanate from an extrajudicial source. The judge's comments are supported by the evidence presented during the course of Frank Monaco's sentencing proceedings.

Furthermore, the comments made by the judge do not demonstrate pervasive bias or prejudice. These statements simply reflect that the judge was appropriately outraged at the enormity of the crime that had taken place and upset with the fact that the par-

ties were not taking responsibility for their crimes.

■ We have held previously that knowledge obtained from judicial proceedings involving a codefendant does not require recusal. *See United States v. Winston*, 613 F.2d 221, 223 (9th Cir.1980) (knowledge obtained during a pretrial competency hearing for a codefendant did not require recusal); *United States v. Azhocar*, 581 F.2d 735, 740 (9th Cir.1978) (remarks based on information contained in a report brought to the judge's attention during the bail hearing of a codefendant did not require recusal), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979). Thus, the fact that the trial judge may have been exposed to materials concerning the nature and extent of Frank Monaco's criminal activities in reviewing his codefendant's presentence reports did not compel recusal in this matter.

B. *Inaccuracies in the Presentencing Report*

Frank Monaco contends that he "raised a substantial issue that materially false and/or untrue information was contained in the presentence report ..." and that the district court should have either granted him an evidentiary hearing or given him the opportunity to depose the persons the probation officer referred to in making his report.

Consideration of claims of inaccuracies in a presentence report is governed by Fed.R. Crim.P. 32(c)(3)(D). Rule 32(c)(3)(D) provides in pertinent part as follows:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.

"Strict compliance with this Rule is required, and 'failure to comply will result in remand.'" *United States v. Sharon*, 812 F.2d 1233, 1234 (9th Cir.1987) (quoting *United States v. Edwards*, 800 F.2d 878, 881 (9th Cir.1986)).

It is clear from the record that the court complied with these requirements. The court, after reading the material before it and hearing oral argument from both sides, found that there was a sufficient basis for belief in the accuracy of the statements in the presentence report.

The question remains whether the district court should have held an evidentiary hearing to allow Frank Monaco to examine witnesses who provided information he asserts was inaccurate. We have not previously resolved the question whether an evidentiary hearing is required whenever a defendant asserts that the presentence report contains inaccurate statements.

In *United States v. Petitto*, 767 F.2d 607, 611 (9th Cir.1985), we suggested that the issue whether an evidentiary hearing is necessary to allow adequate rebuttal to allegedly inaccurate statements in a presentence report is left to the discretion of the district court. In *Petitto*, we were called upon to determine whether the district court had complied with Fed.R.Crim.P. 32(c)(3)(A) in conducting the sentencing proceedings. Rule 32(c)(3)(A) provides in pertinent part:

> At a reasonable time before imposing sentence the court shall permit the defendant and the defendant's counsel to read the report of the presentence investigation.... The court shall afford the defendant and the defendant's counsel an opportunity to comment on the report and, in the *discretion of the court*, to introduce testimony or other information relating to any alleged factual inaccuracy contained in it.

(Emphasis added). In *Petitto*, we commented that

> [d]ue process does not require an evidentiary hearing ... on all challenged information in the presentence report. At the court's discretion[,] this opportunity to rebut could be granted by allowing defendant and his counsel to comment on the report or to submit affidavits or other documents, or by holding an evidentiary hearing.

767 F.2d at 611 (citations omitted). Our observations in *Petitto* were dictum, however, because the court concluded that the district court had failed to comply with the finding requirements of Rule 32(c)(3)(D). *Id.* In *Petitto*, we remanded the matter to the trial court with directions that it comply with Rule 32(c)(3)(D) and make the initial determination whether an evidentiary hearing was necessary. *Id.*

The Tenth Circuit has also stated in *dictum* "that the decision of whether to hold an evidentiary hearing is within the discretion of the trial court." *United States v. Peterman*, 841 F.2d 1474, 1484 (10th Cir. 1988). In *Peterman*, we commented that while the defendant "must be given an opportunity to explain why he believes the presentence report was incorrect, the scope of the procedure for rebuttal lies within the sound discretion of the trial judge in 'balancing the need for reliability with the need to permit consideration of all pertinent information.'" *Id.* (quoting *United States v. Papajohn*, 701 F.2d 760, 763 (8th Cir.1983), in turn quoting *Orner v. United States*, 578 F.2d 1276, 1279 (8th Cir.1978)). The Tenth Circuit did not decide whether the trial court abused its discretion in denying an evidentiary hearing because it was required to remand the case for resentencing due to a failure to comply with Rule 32(c)(3)(D) and to determine in the first instance whether an evidentiary hearing was necessary. *Id.*

■ We agree with the interpretation of Rule 32(c)(3)(A) contained in *Petitto* and *Peterman*. Rule 32(c)(3)(A) expressly provides that the decision whether testimony may be introduced to rebut any factual allegation is "in the discretion of the court." Accordingly, we hold that a district court's decision to deny a request for an evidentiary hearing on alleged inaccuracies in a presentence report must be reviewed for abuse of discretion.

A district court may "consider a wide range of information in arriving at the sentencing decision[,]" *United States v. Givens,* 767 F.2d 574, 585 (9th Cir.), *cert. denied,* 474 U.S. 953, 106 S.Ct. 321, 88 L.Ed.2d 304 (1985), including dropped counts in an indictment. *United States v. Romano,* 825 F.2d 725, 728 (2d Cir.1987). In order to challenge successfully information in a presentence report, the information must lack "'some minimal indicium of reliability beyond mere allegation.'" *United States v. Ibarra,* 737 F.2d 825, 827 (9th Cir.1984) (quoting *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982), construing *United States v. Weston,* 448 F.2d 626, 633–34 (9th Cir.1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972)).

In ruling on Frank Monaco's Rule 32(c)(3)(D) motion, the district court had before it (1) the probation officer's presentencing report, (2) the Government's sentencing memorandum and exhibits, (3) Frank Monaco's sentencing memorandum, (4) Frank Monaco's response to the Government's sentencing memorandum, and (5) Frank Monaco's motion to correct the presentence report. On appeal, Frank Monaco raises three general categories of inaccuracies in the presentence report that he claims he did not have an adequate opportunity to rebut.

**1. Loss Attributable to Frank Monaco**

First, Frank Monaco contends that he was unable to respond to the amount of loss attributed to him in the presentence report. He claims that "he should have been given an opportunity to examine the sources the probation officer relied upon to make sweeping statements concerning his connection with the theft of millions of dollars." The probation officer received these figures from the Government. *See* Presentence Report for Frank Monaco 4–14. The Government presented the same information in its sentencing memorandum filed on December 2, 1986. Each of the Government's statements in the sentencing memorandum was supported by a declaration and an exhibit. Frank Monaco received this information prior to filing his own sentencing memorandum. In addition,

he filed a response to the Government's memorandum. He did not, however, take advantage of the opportunity to question the bankruptcy trustee prior to filing his motions to correct the alleged inaccuracies in the presentence report. He stated during his argument on the motion to correct the report that the trustee did not respond to his phone calls. The record shows, however, that he failed to ask the court for an order requiring the trustee to respond to his questions.

Frank Monaco also had access to all of the materials collected by the Government for trial. Following the indictment, Frank Monaco and the Government engaged in extensive investigations and discovery. The Government made all Rule 16 discovery materials available to each defendant. In addition, the Government provided each defendant with its list of trial witnesses and exhibits.

Finally, the record shows that Frank Monaco owned the Golden Plan. If the Government's financial information was inaccurate, he had the opportunity to present correct facts to the court from the company's records.

In light of the evidence presented by the Government, and Frank Monaco's failure to present any facts in rebuttal, the district court did not abuse its discretion in concluding that an evidentiary hearing or an order compelling the taking of a deposition of the trustee was not required.

**2. Victim Impact Letters**

Frank Monaco also claims that the presentence report is inaccurate because it refers to victim impact letters which he claims had no connection to his conduct.

Frank Monaco was not given the opportunity to review the victim impact letters referred to in the presentence report until the day of the sentencing hearing. Frank Monaco had unsuccessfully requested that the probation officer permit him to see the victim impact letters. He did not seek an order from the court that he be given an opportunity to see them prior to the hearing. At the hearing, the district court or-

dered a twenty-minute delay in the proceedings to permit Frank Monaco's attorney to read the forty-five victim impact letters.

The victim impact letters were solicited prior to defendant Samuel Monaco's sentencing on February 25, 1986. According to Frank Monaco, the letters do not

specifically identify themselves with this case, that is to say, with the count to which Frank Monaco has pled guilty. They talk in general terms and I believe that it's impossible, looking at the letters, to take those letters and say that those letters relate to the crime to which the defendant pled guilty.

Frank Monaco argues that, because the letters refer to the indictment in general and not to the specific charge to which he pled guilty, all references to them should have been stricken from the presentence report.

The majority of the victim impact letters do not refer specifically to Frank Monaco, to any other defendant by name, or to any specific allegation in the indictment. The letters instead complain only in general terms of the losses the victims suffered as a result of their relationship with Golden Plan.

Because Frank Monaco pled guilty to the conspiracy count of the indictment, the fact that he or his criminal activities is not described in the letters does not bar their consideration by the court in making its sentencing decision. His participation in the conspiracy to defraud contributed to the victims' losses. Accordingly, the court did not err in considering the victim impact letters. *See* Fed.R.Crim.P. 32(c)(2)(C) (presentence report should contain section cataloging harm or loss suffered by any victim of the offense).

3. Tax Liability

■ Frank Monaco contends that the estimated tax liability in the presentence report was inaccurate and misleading because (1) his "plea bargain provides taxes due will be calculated and resolved by the civil division of the Internal Revenue Service in a separate proceeding" and ·(2) the "estimate does not include offsets for loss-

es suffered" by him. Frank Monaco also alleges that he "has not been given access to the information used to calculate his tax liability." In his reply brief, Frank Monaco states that the IRS has never calculated an amount due and that he believes that there is no tax due. Finally, he argues that he should be given the opportunity to cross-examine the accountant who prepared the allegedly fraudulent tax return so that he could expose the reasons that the inaccurate tax claim was submitted.

The Government presented to the court in its sentencing memorandum the IRS' calculation of Frank Monaco's estimated tax liability. Frank Monaco did not submit any evidence to contradict these figures. In addition, the plea agreement provides that the "criminal plea does not compromise in any way the civil tax liabilities or penalties that might be sought against Frank Monaco by the government." The plea agreement did not preclude the Government from presenting an estimate of Frank Monaco's tax liability to the district court for consideration in reaching its sentencing decision.

The district court did not abuse its discretion in refusing to continue the sentencing proceedings to allow Frank Monaco to present evidence concerning his tax liability. Frank Monaco had the opportunity to present evidence prior to the date of the sentencing hearing to support his allegations that he owed no taxes but failed to do so.

It should also be noted that the accountant who prepared the Golden Plan's financial records was employed by Frank Monaco when the tax returns were executed. Frank Monaco failed to explain to the district court the reason that the accountant was· not available for questioning about any tax liability prior to the sentencing hearing. The district court did not abuse its discretion in denying Frank Monaco the opportunity to continue the proceedings so that he could present the accountant as a witness.

C. *Mechanically Imposed Sentence*

Frank Monaco contends that the district court sentenced the codefendants as a

group and refused to consider individual culpability or the nature and extent of the harm caused by each individual defendant.

■ When a sentence "is within the statutory limits, it will be reviewed only for an abuse of discretion." *United States v. Benny,* 786 F.2d 1410, 1421 (9th Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986). The failure to individualize a sentence, however, compels reversal or resentencing of the defendant. *United States v. Barker,* 771 F.2d 1362, 1365 (9th Cir.1985). "In each case, a criminal sentence must reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *Id.* We must look at the record to see if it indicates "that the district court actually and adequately considered the factors necessary to insure that each individual defendant was assessed and sentenced as an individual[.]" *Id.* at 1365–66.

Frank Monaco's claim that the district court engaged in mechanical sentencing is readily refuted by examining the sentence received by each defendant. *Cf. United States v. Allen,* 675 F.2d 1373, 1385–86 (9th Cir.1980) (mechanical sentencing claim answered by pointing out varied sentences for codefendants), *cert. denied,* 454 U.S. 833, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981). The sentences imposed by the court were not uniform. Some defendants received the maximum sentence. Others received less than the maximum possible punishment. For example, Gregory Monaco received a sentence of seven years, three years less than the maximum, and one year less than that recommended in the presentence report. Clearly, if the district court engaged in mechanical sentencing, each defendant would have received the maximum sentences.

In addition, the district court, in sentencing Frank Monaco, stated:

> In accepting the plea bargain or agreement and thus limiting the Court to a maximum of ten years, I am already crediting all the mitigating factors which the defense now argues including the defendant's lack of prior conviction histo-

ry, the fact that it is difficult to assess individual responsibility among several of the co-defendants who today cast an accusing finger at each other and the fact, as the Probation Office recognizes, that the total loss in millions occasioned by the collapse of the Golden Plan Company may be partially attributable to mismanagement and a collapse in the real estate market as well as the criminal conduct of each of the principal defendants, namely Frank, Samuel, Gregory and Daniel Monaco.

This statement by the district court demonstrates the court pronounced individualized sentences. The court's explanation of the basis for its sentence, and the variation in the punishment set out by the court, distinguishes this matter from the cases relied on by Frank Monaco. *See Barker,* 771 F.2d at 1366–67 (court engaged in mechanical sentencing when it imposed same maximum sentence on all five defendants even though there was evidence of different levels of involvement and the government asked for much lighter terms); *United States v. Lopez–Gonzales,* 688 F.2d 1275, 1277 (9th Cir.1982) (remanded for resentencing because "judge stated that he automatically imposes the maximum sentence whenever an illegal alien is apprehended after flight and pursuit ..."). Accordingly, we conclude that the court did not engage in mechanical sentencing in this action.

## IV.

### DANIEL MONACO'S APPEAL

■ Daniel Monaco argues that the district court erred when it refused to grant him a hearing "to determine whether incarceration would constitute cruel and unusual punishment."

Daniel Monaco has multiple sclerosis. He argues before this court that because no specific details concerning his "condition or needed treatment were given the prison official, nor was any current physical examination performed ... the Court had a clear duty to at least allow a hearing under [Fed.R.Crim.P.] 32(c)(3)(D) to determine

[his] present condition, needed treatment and availability of prison facilities, to treat him."

The presentence report concluded that there were facilities available for an inmate in Daniel Monaco's physical condition. Daniel Monaco filed an objection to this finding with the Probation Office and requested a physical examination to determine if he should be sentenced to prison. In his sentencing memorandum of December 30, 1986, Daniel Monaco again objected to the presentence report's finding and requested that the court order further proceedings to determine his current physical condition.

During the sentencing hearing, Daniel Monaco told the court that he needed intensive rehabilitation to regain the use of his legs and that such care was not available within any prison facility. The Government stated that the Bureau of Prisons had informed the probation officer that their hospitals could handle "someone with an advanced or severe case of multiple sclerosis."

The court denied the request for further proceedings and found that there was a sufficient factual basis for the statement in the presentence report that Daniel Monaco could receive adequate medical treatment in a prison facility. The court then sentenced Daniel Monaco to five years imprisonment. The sentence was expressly imposed by the court pursuant to 18 U.S.C. § 4205(b)(2) (1982) so that Daniel Monaco would be "immediately eligible for release on parole in the discretion of the United States Bureau of Prisons and even to a Veteran's Administration Hospital if they deem it advisable...."

The district court did not abuse its discretion in denying Daniel Monaco's request for an evidentiary hearing. The court had before it the statements of the probation officer and the Government attorney that they had been informed that the Bureau of Prisons had facilities to provide medical care for a prisoner with advanced or severe multiple sclerosis.

In addition, Daniel Monaco stated during argument on his objection that he had con-firmed "that the prison system says it can take somebody in an advanced case of deterioration from this disease...." His only objection was that he would not be able to get a certain type of treatment while in prison. Although he had claimed since mid-November that, contrary to the presentence report, the Bureau of Prisons could not provide adequate medical facilities for someone in his condition, he failed to present any evidence during the sentencing hearing to support his assertion that the type of treatment he sought was not available in the prison system.

In concluding that the district court did not abuse its discretion we are mindful that the district court sentenced Daniel Monaco pursuant to 18 U.S.C. § 4205(b)(2), to permit the parole board to release him immediately if it was determined that the Bureau of Prisons could not provide adequate care. The district court did not abuse its discretion in denying Daniel Monaco's for an evidentiary hearing to challenge the accuracy of the presentence report that the Bureau of Prisons can provide adequate care for a prisoner suffering from multiple sclerosis.

The sentences imposed against Frank Monaco and Daniel Monaco are AFFIRMED.