UNITED STATES of America, Appellee,

v.

Neal R. BRUCKMAN,
Defendant, Appellant.

No. 88–1035.

United States Court of Appeals,
First Circuit.

Heard March 1, 1989.

Decided May 9, 1989.

Jeffrey M. Kaplan with whom Stanley S. Arkin, New York City, was on brief, for defendant, appellant.

Martin F. Healey, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for U.S.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and FUSTE,* District Judge.

FUSTE, District Judge.

Appellant-defendant Neal R. Bruckman ("Bruckman") appeals his conviction after jury verdict on twenty-five counts of mail fraud under Title 18, United States Code, Section 1341. The indictment alleged that Bruckman and others schemed to defraud various persons and entities by inducing them to enter into business combinations with Aetna Properties, Inc. ("Aetna") and Oxford Capital Corp. ("Oxford"). The scheme was carried out in part through the use of fraudulent financial statements for Aetna and Oxford. Such statements were mailed in the course of the intended acquisition of South Shore Vending, Inc. ("South Shore").

Appellant Bruckman raises three issues on appeal: 1) whether there was sufficient evidence to support his conviction under 18 U.S.C. § 1341, for knowingly causing the mailings in furtherance of a scheme to defraud; 2) whether the conviction must be reversed due to violation of the Speedy Trial Act; and 3) whether the trial court erred in denial of his motion to correct or exclude certain victim impact assessment information included in the presentence report. We discuss each of appellant's arguments in turn, and for the reasons set forth below, we affirm Bruckman's conviction, but remand for a clarification of the record pursuant to Fed.R.Crim.P. 32(c)(3)(D).

## I. SUFFICIENCY OF THE EVIDENCE

In reviewing Bruckman's claim, we must view the evidence in the light most favorable to the government to determine whether there was sufficient evidence to permit a reasonable jury to find Bruckman guilty of the alleged mail fraud violations.[1] *United States v. Martin,* 694 F.2d 885, 889 (1st Cir.1982); *United States v. Benmuhar,* 658 F.2d 14, 16 (1st Cir.1981), *cert. denied* 457 U.S. 1117, 102 S.Ct. 2927, 73 L.Ed.2d 1328 (1982); *see United States v. González Sánchez,* 825 F.2d 572, 587 & n. 51 (1st Cir.), *cert. denied* — U.S. ——, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987). We look to the inferences to be drawn from the facts in light of the precept that "the jury is free to choose among varying interpretations of the evidence, as long as the interpretation they choose is reasonable." *United States v. Delgado Figueroa,* 832 F.2d 691, 692–93 (1st Cir.1987) (citations omitted). We find that the evidence reveals that the jury could have reasonably concluded that Bruckman violated the mail fraud statute.

In 1982, individuals associated with Bruckman attempted to purchase South Shore, which was already under the protection of the U.S. Bankruptcy Court, through a reorganization plan under Chapter 11. The purchase of South Shore was to be effected by Oxford, using cash and Aetna stock. Additional Aetna stock was to be used to purchase the claims of South Shore's creditors. In the context of discussions concerning the acquisition, Bruckman and others represented to Dennis Nixon, the owner/debtor in possession of South Shore, that Aetna was a shell company started and principally owned by Bruckman, with stock valued at $3.50 to $4.00 per share. The record illustrates that

---

* Of the District of Puerto Rico, sitting by designation.

1. Section 1341 provides in applicable part:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon ... any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. 18 U.S.C. § 1341.

Bruckman participated in negotiations wherein the inflated value of Aetna was discussed in context of another intended acquisition by Oxford, that of Myimpa Exports, Inc., a creditor of South Shore. The jury also could reasonably have concluded that Bruckman was a consultant or advisor to Oxford and to the individuals representing Oxford, who were pursuing the acquisition of South Shore. Based on the evidence presented, a trier of fact could reasonably infer that Bruckman was responsible for the preparation of the fraudulent Aetna financial statement and that he supplied such document to others to be filed with the Bankruptcy Court in furtherance of the intended acquisition of South Shore. To effect the purchase of South Shore, the fraudulent financial statements of Oxford and Aetna were submitted to the Bankruptcy Court as attachments to the reorganization plan, and these documents were mailed to the 25 creditors of South Shore. such mailings serve as the basis for the 25 counts charged in the indictment.

■ In order to constitute a violation of the mail fraud statute, a defendant must have knowingly caused the mails to be used in furtherance of a scheme to defraud. *See* 18 U.S.C. § 1341. The statute does not require that the scheme actually contemplate the use of the mails, but a person is deemed to have "caused" the mails to be used "[w]here one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended...." *Pereira v. United States,* 347 U.S. 1, 8–9, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *accord, United States v. Delgado Figueroa,* 832 F.2d at 696–97 (government not required to show actual intent that mail be used or to violate statute). It is not necessary to prove that the defendant personally executed the mailings, but merely that the defendant "caused the mailing by doing some act from which it is reasonably foreseeable that the mails will be used." *United States v. González–Sánchez,* 825 F.2d at 588 & n. 54–55. The fact that an innocent third party, i.e., the Bankruptcy Court herein, sent the mailings, is

sufficient where the use of the mails would foreseeably follow in the ordinary course of business. *United States v. Fermin Castillo,* 829 F.2d 1194, 1198 (1st Cir.1987); *United States v. Benmuhar,* 658 F.2d at 16–17. In other words, the causation requirement is met so long as some use of the mails was reasonably to be anticipated in the course of the scheme. *United States v. Fermín Castillo,* 829 F.2d at 1198.

■ Bruckman contends that there is insufficient evidence that he had knowledge of the mailings or that such mailings were reasonably foreseeable. Upon a review of the evidence, we disagree. We note that Bruckman was not a naive, unsuspecting participant in the South Shore endeavor, but rather a sophisticated investor and businessman, with a principal role in the overall elaborate scheme to defraud. The jury could reasonably have found that Bruckman had knowledge of the submission of the fraudulent financial statements to the Bankruptcy Court in furtherance of the scheme to defraud. In any event, the question of whether Bruckman had actual knowledge that the Court would issue a mass mailing of the fraudulent statements to creditors is not dispositive as to the question of whether Bruckman knowingly caused the mailings within the meaning of the mail fraud statute. There was ample evidence from which the jury could conclude both that Bruckman participated in the scheme to defraud, and that some use of the mails was to be anticipated in the course of such scheme. The jury could reasonably infer that mailings would be foreseeable in the course of the bankruptcy reorganization proceedings related to the intended acquisition of South Shore by Bruckman and others. Accordingly, there is sufficient evidence from which the jury could have reasonably concluded that Bruckman knowingly caused the mailings which are the subject of the indictment in violation of 18 U.S.C. § 1341.

## II. THE SPEEDY TRIAL ACT

■ The "linchpin" provision of the Speedy Trial Act, 18 U.S.C. §§ 3161–3174

(1974) (amended 1979), mandates that the accused be brought to trial within seventy days after indictment or initial appearance (§ 3161(c)(1)), as enlarged by certain excludable intervals (§ 3161(h)), or the court must order dismissal upon motion of the defendant (§ 3162(a)(2)). *See United States v. Hastings*, 847 F.2d 920, 924 (1st Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). Bruckman urges reversal of his conviction based upon the allegation that eighty-four non-excludable days had passed [2] before the commencement of his trial. Because we agree with the government that the thirteen-day contested period of February 17 through March 1, 1987 is excludable, we find Bruckman's conviction was not rendered in violation of the Speedy Trial Act.

This thirteen-day time period is excludable due to a motion for continuance filed by the government on January 23, 1987 and "allowed" by the district court on February 3, 1987.[3] The motion requested a continuance of the trial date from February 17, 1987 to at least March 2, 1987, based upon an accompanying memorandum. In the memorandum, the government submitted that due to the complexity of the case and the number of potential witnesses, a continuance would be justifiable based upon the "ends of justice" (18 U.S.C. § 3161(h)(8)(A)), or the "unavailability of witnessses" (18 U.S.C. § 3161(h)(3)(B)) exceptions to the Speedy Trial Act. The memorandum sets forth an unassailably compelling reason for the requested continuance: the December 29, 1986 death of the sole prosecuting attorney who had been assigned to this complex case during its three-year investigation and preparation. The record reveals that Bruckman's defense counsel at that time joined in the motion for continuance filed by the newly

assigned government attorney.[4] In any event, Bruckman does not object to the validity of the reasons for the continuance as articulated by the government, nor would such challenge be fruitful. Appellant Bruckman argues that the district court ruling, which merely "allowed" the continuance motion, is insufficient to exclude any days under the Speedy Trial Act due to its failure to adequately explain the factual basis for the continuance or to specifically reference the time as excludable under the Speedy Trial provisions. We find that the trial court's ruling was adequate to exclude the thirteen-day continuance period under the "ends of justice" terms and criteria of section 3161(h)(8).

Section 3161(h)(8)(A) generally requires that no period of delay resulting from a continuance granted by the court shall be excludable for the purposes of Speedy Trial Act computations unless the court sets forth in the record "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). In *United States v. Rush*, 738 F.2d 497 (1st Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1355, 84 L.Ed.2d 378 (1985), we stated that the purpose of the requirement is to insure that the relevant criteria are carefully considered by the trial court and to provide a reviewable record for appeal. *Id.* at 507 (no violation where text of order taken together with subsequent statements explains factual basis under relevant criteria). Bruckman argues, based upon the language in *Rush*, that the district court herein was required to supplement the record so that the factual basis for the continuance may be gleaned from the text of the ruling taken

---

2. Bruckman alleges the following days as nonexcludable to comprise the total of eighty-four days: 1) November 23–25, 1985 (3 days), 2) November 26, 1985 (1 day), 3) January 14–22, 1987 (9 days), 4) February 4–16, 1987 (13 days), 5) February 17–March 1, 1987 (13 days), 6) September 2–29, 1987 and October 2–18, 1987 (45 days). *See* Brief of Appellant Neal R. Bruckman, at 31–33, Bruckman Appendix at 133.

3. The district court's handwritten margin order appears on the government's motion which is followed by the supporting memorandum, *see* Bruckman Appendix at 107–112.

4. The government's motion and the statements of then defense attorney Hoffman illustrate that Bruckman joined in the continuance request, *see* Bruckman Appendix at 110, 201–08; trial transcript, vol. 1 at 71–78.

together with subsequent statements made by the court. Such explicitness is certainly to be encouraged and would facilitate the appellate determination of whether the trial court performed the requisite careful deliberation as to the relevant factors. However, we have previously stated that the judge's rulings and the requesting motion are to be read as complementary documents, such that "[w]here the motion sets forth the basic facts, and they are obvious, it is not necessary for the court to articulate them." *United States v. Mitchell*, 723 F.2d 1040, 1044 (1st Cir.1983); *accord*, *United States v. Rush*, 738 F.2d at 507. In the instant case, the basic facts and justifying grounds for the requested continuance and excludable time under the Speedy Trial Act are clearly obvious as explained in the government's motion and memorandum which was "allowed" by the trial court. We see no reason to doubt that the continuance and excludable time granted by the district court was properly grounded in the relevant criteria under section 3161(h)(8)(B).[5] In other words, on its face the record shows that a continuance was justified based on the "ends of justice" criteria pursuant to section 3161(h)(8)(A) and (B). There is no merit to appellant's objection to the fact that these references are delineated in the memorandum accompanying the motion rather than appearing in the motion itself or in later corroborating statements of the trial court. Under the circumstances presented in this case, we decline to adopt Bruckman's restrictive view. Clearly, Congress recognized that Speedy Trial Act time limits must be flexible enough to accommodate the practicalities of the adversary system. *United States v. Mitchell*, 723 F.2d at 1044. We find that the thirteen-day period from February 17 to March 1, 1987 is properly excludable from the Speedy Trial calculations, which reduces the nonexcludable days from 84 to 71.

■ The seventieth non-excludable day would thus be October 17, 1987, and Bruckman's trial was not begun until October 20, 1987. However, because October 17, 1987 fell on a Saturday, the application of Fed.R. Crim.P. 45(a) did not require trial to commence until the following Monday, in this case, October 19, 1987.[6] Bruckman cannot contest that on October 19, 1987 he filed a motion to dismiss for Speedy Trial Act violations, thus making that day excludable pursuant to 18 U.S.C. § 3161(h)(1)(F).[7] Therefore, as trial commenced on the next day, October 20, 1987, we conclude that appellant's claim alleging violation of the Speedy Trial Act must fail.[8] Accordingly, we decline to reverse appellant's conviction and dismiss the indictment on such grounds.

5. The factors which a judge shall consider in determining whether to grant an "ends of justice" continuance under subparagraph (A) which renders such time excludable, are set forth in 18 U.S.C. § 3161(h)(8)(B) as follows:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice. (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
....
(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

6. In the computation of time periods, Rule 45(a) provides that "[t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday ... in which event the period runs until the end of the next day which is not one of the aforementioned days." Fed.R.Crim.P. 45(a).

7. Under 18 U.S.C. section 3161(h)(1)(F), periods of delay resulting from proceedings concerning the defendant, including delay resulting from any pretrial motion, from the filing through prompt disposition, shall be excluded from the time computation. 18 U.S.C. § 3161(h)(1)(F).

8. Given the above analysis, we have no need to consider the possible excludability of other time periods that are contested between the parties.

### III. THE PRESENTENCE REPORT

Bruckman suggests that his sentence be vacated and the case be remanded for resentencing due to alleged error committed by the district court in the denial of his motion to correct the presentence report, and sentencing made in apparent reliance on the controverted information.[9] We determine that Bruckman is not entitled to resentencing, but nevertheless remand so that the trial court may supplement the record with its findings as to the disputed portions of the presentence report.

■ Pursuant to Rule 32(c)(2)(C), the presentence report must contain "information concerning any harm, including financial, social, psychological, and physical harm, done to or loss suffered by any victim of the offense." Fed.R.Crim.P. 32(c)(2)(C) (Rule Applicable to Offenses Committed Prior to Nov. 1, 1987). Such data is referred to as "victim impact" information. In accordance with Rule 32(c)(2)(C), the sentencing judge may properly consider victim impact information concerning financial losses of victims, in the context of a mail fraud case. *See United States v. Monaco*, 852 F.2d 1143, 1150 (9th Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *United States v. Serhant*, 740 F.2d 548, 551–53 (7th Cir.1984). Bruckman's presentence report adopted the government's assessment of victim impact. That assessment estimated the financial loss to victims on the basis of the overall scheme to defraud at $875,000. This figure was derived by using a $3.00 valuation of the Aetna stock, and determining the amount of such stock which was promised or transferred to each of the victims in exchange for interest in businesses owned by the victims.

At the sentencing hearing held on December 16, 1987, Bruckman's counsel made an oral motion to correct or delete the victim impact assessment information as stated in the presentence report with reference to Rule 32. This motion was specifically denied by the district court. Bruckman complains that the assessment was based on the computation of alleged promised benefits and not on the proper criteria which must reflect actual victim loss. Appellant grounds his argument on evidence that the victim businesses were, for the most part, financially troubled and received some cash from the co-schemers as part of the endeavor. Bruckman's theory seems to assert that because some of these businesses were virtually worthless or bankrupt, they could not suffer the assessed quantity of loss, which was measured by the purported value of the Aetna stock. Bruckman maintains that some of these victims rather than incurring a loss, may in fact have "gained" due to the infusion of cash, which in some cases permitted the businesses to remain in operation. At the very least, Bruckman argues that any measurement of victim loss should "net out" the cash actually transferred to the victims in the execution of the scheme. Therefore, he asserts that the measure of actual loss or harm to these victims cannot be determined solely by reference to the purported value of the Aetna stock that they were given or promised. Bruckman thus contends that the estimated victim impact assessment amount of $875,000 was disproportionately inflated, and that the district court erred by denying his motion to correct the presentence report which contained this figure. The appellant further argues that the trial court relied on such erroneous information in the determination of his sentence, as constituting a measure of the seriousness of the offense, and that such reliance constitutes error which requires resentencing.

■ Rule 32(c)(3)(D)[10] serves the dual purpose of 1) protecting a defendant's due

---

9. On counts one through twenty-four, Bruckman was sentenced to two and one-half years imprisonment on each count, to be served concurrently. He was given a two and one-half year sentence on count twenty-five, which was suspended, and a two year probationary term following completion of the sentence imposed on the other counts. The court also imposed a $1,000.00 fine on each of counts one through twenty-four, for a total fine of $24,000.00. *See* Bruckman Appendix at 26–27, 415–22.

10. Fed.R.Crim.P. 32(c)(3)(D) provides as follows:
   If the comments of the defendant and the defendant's counsel or testimony or other in-

process rights to be sentenced on the basis of accurate information, and 2) providing a clear record of the disposition of controverted facts in the presentence report, which, in turn, reduces the likelihood that subsequent appellate or administrative decisions will be made based on improper or incomplete information. *See United States v. Eschweiler*, 782 F.2d 1385, 1387–88 (7th Cir.1986); *accord, United States v. Moran*, 845 F.2d 135, 138–39 (7th Cir.1988). In the course of the sentencing hearing, Bruckman certainly alleged a "factual inaccuracy" in the presentence report, within the meaning of Rule 32(c)(3)(D). Accordingly, the trial court was required to *either* 1) make a finding as to the dispute under subpart (i); *or* 2) declare that the contested victim impact matter would not be taken into account for sentencing purposes under subpart (ii) of Rule 32(c)(3)(D). Whichever course it took, the court was required to append its findings or determination to the presentence report.

■ A violation of Rule 32(c)(3)(D) results where the allegations of factual inaccuracy were before the court at sentencing but there is no indication that the court made any findings as to the accuracy of the challenged portions nor appended a written record of such determination. *See United States v. Jiménez–Rivera*, 842 F.2d 545, 551–52 (1st Cir.), *cert. denied* — U.S. ——, 108 S.Ct. 2882, 101 L.Ed.2d 917 (1988). Where the trial court does not make a finding (under subpart (i)) and it is not clear that the court determined that it would not rely on the disputed presentence report information (under subpart (ii)), a remand is appropriate. *Id.; United States v. Serino*, 835 F.2d 924, 932 (1st Cir.1987). In such situation, the case is remanded for

the district court to clarify whether or not the contested matters were considered and if so, the original sentence must be vacated and resentencing is required. *Id.* If the district court indicates that the disputed items were not taken into account for sentencing purposes, it must endorse a written disclaimer to that effect to be appended to the presentence report and the sentence will stand. *Id.* However, that is not the situation before us.

■ In this case, the record indicates that the trial court did make a "finding" under subpart (i) of Rule 32(c)(3)(D), that there was no inaccuracy in the presentence report. In order to comply with the requirements of Rule 32(c)(3)(D) under subpart (i), the sentencing court must consider the alleged errors and have "found that there was a sufficient basis for belief in the accuracy of the statements in the presentence report." *United States v. Monaco*, 852 F.2d at 1147–50 (no abuse of discretion in trial court denial of evidentiary hearing to challenge alleged inaccuracies in victim impact material in mail fraud case). Compliance with Rule 32(c)(3)(D) may be found despite the fact that the trial court made no specific written finding on the record as to the alleged inadequacies in the presentence report and relied on the disputed information. *United States v. Moran*, 845 F.2d at 138–39.[11] The required finding in Bruckman's case was impliedly made in the denial of his motion to correct the presentence report or to delete the contested material.

■ The district court in this case heard the evidence presented at trial, as well as oral argument at sentencing concerning the validity of the victim impact assessment. Bruckman presented no addi-

formation introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to

the Bureau of Prisons or the Parole Commission.

Fed.R.Crim.P. 32(c)(3)(D) (Rule Applicable to Offenses Committed Prior to Nov. 1, 1987).

11. In *Moran,* the record revealed that the trial judge had found against the defendant on the controverted matters because the judge had stated that he would accept the disputed information unless the defendant presented evidence in opposition, which he did not. *United States v. Moran*, 845 F.2d at 138–39.

tional evidence at sentencing to support his objections nor did he suggest an alternate computation of the victim impact amount, aside from the "net-out" theory. The court then denied Bruckman's motion to correct the presentence report. We find that the trial court made a permissible finding as to the factual dispute raised by appellant at sentencing. Bruckman's due process rights were adequately protected as he had full opportunity to cross-examine the witnesses at trial and to present any rebuttal evidence as to the valuation of the victims' losses. *Cf., United States v. Serhant,* 740 F.2d at 551–552 (rejecting defendant's challenge to inflammatory nature rather than factual inadequacies of victim impact data). The trial court thus complied with the requirements of Rule 32(c)(3)(D), because by its denial of Bruckman's motion, the court impliedly found a sufficient evidentiary basis for the victim assessment information included in the presentence report. Therefore, even assuming *arguendo* that the district court herein relied on the disputed victim impact data, the court did not err in such reliance. There is no need to vacate Bruckman's sentence nor to remand for resentencing.

A separate prescription of Rule 32(c)(3)(D) requires that a written record of the trial court's "findings and determinations" made under either subpart (i) or (ii) concerning the controverted matter must be appended to the presentence report. From the record before us, it is not clear that the district court herein complied with this obligation. As set forth above, we have determined that the district court in Bruckman's case made a finding under subpart (i) that the disputed material did not constitute a factual inaccuracy in the presentence report, and accordingly, the sentencing judge was entitled to rely on such information. The Seventh Circuit reached the same conclusion in the case of *United States v. Moran,* 845 F.2d at 138–39, wherein the trial court had similarly failed to append a record of its findings to the presentence report. We reiterate the *Moran* court's cautionary instruction that faithful adherence should be maintained to the mandatory procedural attachment requirements of Rule 32(c)(3)(D), which will spare later unnecessary effort to uncover the trial court's "findings." *Id.* at 139. In *Moran,* the failure to attach the written record of findings was characterized as a ministerial matter which had already been remedied, because the transcript of the sentencing proceeding had since been appended to the presentence report. *Id.* Therefore, in that case, the Seventh Circuit did not remand despite the failure of the trial court to attach a written record of its findings that it had resolved the factual dispute against the defendant. *Id.* We are presented with a different situation, where the trial court's findings and determinations have not yet been appended to the presentence report.

We find a remand to be the most prudent route in the potentially ambiguous situation where the trial court has failed to append its findings or determination under either subpart (i) or (ii) of Rule 32(c)(3)(D). Even in cases where the trial court has indicated that it would not consider the disputed information pursuant to subpart (ii) of Rule 32(c)(3)(D), a remand without vacating the sentence is required if the court fails to attach a record of that determination to the presentence report. *See, United States v. Santamaria,* 788 F.2d 824, 829 (1st Cir.1986) (remand for court to attach findings without vacating sentence); *United States v. Castillo-Román,* 774 F.2d 1280, 1283–85 (5th Cir. 1985) (remand required for attachment of copy of findings is of ministerial nature and does not require vacating sentence). Requiring attachment of the trial court's findings furthers the goal of Rule 32(c)(3)(D) to provide appellate courts and administrative agencies with a complete and clarified record for the future use of the presentence report in their decision-making processes. *United States v. Eschweiler,* 782 F.2d at 1390–91 (without attached determination there will be no record that defendant alleges information to be inaccurate). We remand so that the trial court may append its findings and determinations as to the controverted mate-

rial, to the presentence report, as is required under Rule 32(c)(3)(D).

## IV. CONCLUSION

For the reasons set forth in this opinion, we *affirm* Bruckman's conviction, but *remand* so that the district court may comply with Rule 32(c)(3)(D).