**UNITED STATES, Appellee,**

v.

**Joseph GERANTE, Defendant, Appellant.**

**No. 89–1235.**

United States Court of Appeals, First Circuit.

Heard Oct. 4, 1989.

Decided Dec. 8, 1989.

As Amended Dec. 21, 1989.

Constance L. Rudnick, with whom Richard A. Gargiulo and Gargiulo, Rudnick & Gargiulo, Boston, Mass., were on brief for defendant, appellant.

R.J. Cinquegrana, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before CAMPBELL, Chief Judge, and TIMBERS,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

A district court sentenced defendant Joseph Gerante to 97 months in prison for possessing and intending to distribute five hundred grams or more of cocaine. On appeal from the sentence, Gerante alleges various errors, including the district court's basing of its estimate of the quantity of cocaine for sentencing purposes in part upon the discovery of $68,000 in cash at Gerante's residence. We affirm the district court's sentence, but remand so that the court may append its findings and determinations, as to any controverted mate-

---

*Of the Second Circuit, sitting by designation.

rial, to the presentence investigation report as required by Fed.R.Crim.P. 32(c)(3)(D).

## I.

On July 29, 1988, Drug Enforcement Administration (DEA) officers arrested Gerante while he was in possession of 4.98 kilograms of cocaine. Later that day Gerante agreed to a search of his residence, where the officers found, among other things, small quantities of illegal narcotics, five loaded firearms, and $68,000 in United States currency.

At the Arlington, Massachusetts police station, DEA agents questioned Gerante about his drug activities and the origin of the $68,000. A DEA Report of Investigation (DEA report) indicated that in response to these questions, Gerante admitted to the following: (1) for the past six months he had been dealing multi-kilogram quantities of cocaine; (2) during this period of time he had delivered anywhere from two to seven kilograms of cocaine to a certain individual every two to four weeks; (3) on the morning of his arrest he had been in the process of delivering five kilograms to this person; and (4) earlier that week he had received the $68,000 from this person as a payment for a prior cocaine delivery.

A grand jury indicted Gerante on August 18, 1988, charging him with possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, on December 19, 1988, Gerante withdrew a pretrial motion to suppress the DEA Report and other items and entered a plea of guilty on a criminal information charging him with possession with intent to distribute 500 grams or more of cocaine.

The probation department (department) then completed a presentence investigation report (PSI), which included the following findings and recommendations. Based in part on the facts contained in the DEA report, the relevant quantity of cocaine for sentencing purposes was 7.98 kilograms. This figure equaled the sum of 4.98 kilo-

grams, which was the amount of cocaine found on Gerante, and three kilograms, which was the estimated amount of cocaine Gerante had sold in exchange for the $68,000 found in his residence. According to the Drug Quantity Table, this quantity of cocaine produced a base offense level of 32. Subtracting two points for Gerante's acceptance of responsibility, his total offense level equaled 30. Given Gerante's criminal history category of I, this provided for a sentencing range of 97 to 121 months.

The district court conducted a sentencing hearing on February 23, 1989. At the hearing, the court asked the department representative a series of questions in order to understand exactly how the department had calculated the base offense level of 32. The representative explained that because a kilogram of cocaine had a street value of $16,000 to $20,000, Gerante had sold at least three kilograms in exchange for the $68,000. The representative further explained that the three kilograms were added to the original 4.98 kilograms found on Gerante to ensure that Gerante would be held fully accountable for his relevant conduct in accordance with Guideline § 1B1.3(a)(2) (base offense level for applicable drug offenses should be determined on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.").

The district court then heard from the government and Gerante. The government agreed with the department's calculations, but Gerante argued for lower base and total offense levels. On the issue of the proper base offense level, Gerante insisted that the Guidelines did not permit the department to convert drug money into an estimated quantity of cocaine. Gerante argued in the alternative that even if such a conversion were appropriate under certain circumstances, such circumstances did not exist in the present case. Contrary to the admissions described in the DEA report, Gerante denied telling DEA agents that the $68,000 had originated from a prior drug transaction. Rather, Gerante said the $68,000 constituted a cash advance for the drugs he possessed when arrested. Ac-

cordingly, the only relevant amount of cocaine for sentencing purposes was the amount discovered at the time of his arrest (4.98 kilograms), which corresponded to a base offense level of 30.

With regard to the appropriate total offense level, Gerante contended that the department had failed to reduce the base offense level by two points based on Gerante's "role in the offense," which was that of a minor participant. Starting with a base offense level of 30 (rather than 32) and subtracting four points (rather than two) for his minor role and for his acceptance of responsibility, Gerante argued that his total offense level should equal 26.

After hearing further argument on the relevant issues, the district court held that it would accept the government's recommended base offense level of 32 and its recommended total offense level of 30. The court then sentenced Gerante to 97 months in prison, three years supervised release, and a $15,000 fine. This sentence was at the bottom of the applicable Guidelines range for a total offense level of 30 (and at the top of the range for a total offense level of 28).

## II.

Gerante now complains that the district court failed to make a required finding, refused to conduct an evidentiary hearing, relied on insubstantial evidence, and presumed incorrectly that it could convert money from a prior drug sale into an estimated quantity of cocaine. In addition, Gerante argues that the court failed to determine whether his role in the offense was sufficiently minor to require the court to lower his base offense level by two points. We address each contention.

### A. The Finding

■ Under Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, if the defendant alleges a factual inaccuracy in the PSI, the district court is required, among other things, to make "(i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the

matter controverted will not be taken into account in sentencing." Fed.R.Crim.P. 32(c)(3)(D). This requirement serves the dual purpose of protecting the defendant's due process rights and providing a clear record for appellate review. *See United States v. Bruckman*, 874 F.2d 57, 63–64 (1st Cir.1989).

At the sentencing hearing, Gerante argued that the PSI was factually inaccurate in stating that the $68,000 constituted income from a prior drug sale. According to Gerante, the money was merely a prepayment for the 4.98 kilograms seized from him on the 29th of July. Gerante's allegation of a material factual inaccuracy in the PSI required the district court to make a finding on this issue. *See id.*

We are satisfied that the district court made such a finding. At the hearing, each side presented arguments regarding its view of the proper base offense level. The arguments focused in part on the issue of whether the PSI's conclusion that the $68,000 constituted income from a prior drug sale was factually accurate. After questioning each side, the court accepted the government's recommended base offense level of 30. In doing so, the court implicitly made the required finding that the $68,000 originated from a prior drug transaction. *See id.* at 64 ("The required finding in Bruckman's case was impliedly made in the denial of his motion to correct the presentence report or to delete the contested material.").

*B. Evidentiary Hearing*

■ Guideline § 6A1.3(a) provides in part that "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." In resolving such a dispute, the court may sometimes need to conduct an evidentiary hearing. *See* Guideline § 6A1.3, Commentary.

In the present case, the district court decided against conducting an evidentiary hearing regarding the origin of the $68,000. We review this decision for abuse of discre-

tion. *See United States v. Monaco*, 852 F.2d 1143, 1148 (9th Cir.1988); *United States v. Fatico*, 603 F.2d 1053, 1057 n. 9 (2d Cir.1979).

At the sentencing hearing, the government offered to call the author of the DEA report as a witness in order to establish that Gerante had told him that the $68,000 constituted income from a prior drug transaction. Gerante made no specific response to this offer, though he did challenge the accuracy of the DEA agent's statement. Later, the prosecutor attempted to summarize the factual dispute before the court:

> [T]here is a factual dispute as to whether or not this court wants to believe that the first and only time this guy delivered five kilograms of coke was this time, ... or whether you believe the statements of the DEA agent that this person at the time of his arrest said he was in the business....
>
> The dispute of fact is that the Defendant, just to be clear, is claiming this is his first and only drug trafficking activity ever. And it's the government's position that this is not true, based on his own statements, based on the quantity of coke and the quantity of money involved.

The court ruled that it did not

> see any need for [an examination of the author of the DEA report], I think we ought to proceed from the point that I am accepting the contention of the Probation Department and of the Government that this figure should be 32. And there is no question that it should be reduced by two [for acceptance of responsibility], so that we wind up with a 30....

We think that, in the circumstances, the court could properly conclude that Gerante's recent version of the facts was implausible, and that there was no need to bolster the DEA report by calling its author to the stand. *Cf. United States v. Wright*, 873 F.2d 437, 441 (1st Cir.1989) (sentencing court may rely on hearsay evidence that appears reliable). The breadth and detail of Gerante's original admissions, the finding of the five loaded guns, and the quantity of drugs and money, all undercut

Gerante's claim to only a modest involvement in drug-dealing.

### C. Sufficiency of the Evidence

Gerante contends that insufficient evidence exists to support the district court's implicit conclusion that the $68,000 originated from a prior drug transaction. He further argues that even if the evidence sufficiently supports such a conclusion, the evidence does not support the district court's finding that the drugs purchased with that money were part of the same course of conduct as the instant offense. *See* Guideline § 1B1.3.

■ We review the district court's findings of fact, as well as its application of § 1B1.3 to these facts, under a clearly erroneous standard. *See United States v. Wright*, 873 F.2d 437, 443 (1st Cir.1988) (reviewing district court's "role in the offense" determination under Guideline § 3B1.2). Under this standard, we find the district court's conclusion regarding the origin of the $68,000 to be supported by "sufficient indicia of reliability." *See* Guideline § 6A1.3(a) (requiring only "sufficient indicia of reliability to support the probable accuracy" of a given fact). Moreover, we hold that the district court did not commit clear error when it concluded that the drugs purchased with the $68,000 were part of the same course of conduct as the offense of conviction. *Cf. United States v. Sarasti*, 869 F.2d 805, 807 (5th Cir.1989) (upholding district court's determination that defendant's relevant conduct included cocaine that was in route to but never reached defendant).

### D. The Conversion

■ Gerante urges that even assuming (1) the court made a finding that the $68,000 originated from a prior drug transaction; (2) the evidence supported this finding; and (3) the district court was not clearly erroneous in concluding that the drugs purchased with the $68,000 were part of the same course of conduct as the instant offense, the Guidelines nevertheless did not permit the district court to convert the $68,000 into an estimated quantity of cocaine for the purpose of calculating the base offense level. In resolving this issue, we look to the relevant Guidelines provisions.

In determining the base offense level in a drug case such as the instant one, the applicable guideline is § 2D1.1, *Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses)*. Subsection (a)(3) of this section provides that in cases not involving death or serious bodily injury, "the base offense level is the level specified in the Drug Quantity Table below." Guideline § 2D1.1(a)(3). The Drug Quantity Table lists various quantities of controlled substances and their corresponding base offense levels. Given this table, the principal task for the district court is to ascertain the appropriate quantity of drugs. Once the court has determined this, it need only refer to the table to find the corresponding base offense level for that quantity.

The commentary to Guideline § 2D1.1(a)(3) makes it clear that the court should include all "relevant" quantities of drugs in its calculation. *See* Commentary Note 11, Guideline § 2D1.1 ("Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. *See* § 1B1.3(a)(2) (Relevant Conduct)"). To determine whether any given quantity of drugs is "relevant," the court should examine Guideline § 1B1.3(a)(2). That subsection defines relevant conduct

> solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, [as] all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction....

Thus, if an offense is one "of a character for which § 3D1.2(d) would require grouping of multiple counts," then the defendant's relevant conduct includes "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction."

■ Turning to § 3D1.2(d), that section states in part that "[c]ounts are grouped together if the offense level is determined largely on the basis of ... the quantity of the substance involved...." This subsection specifically includes drug offenses. *See id.* (mentioning drug offenses such as the instant one). Moreover, the fact that the government alleges only one count does not preclude a court from applying § 1B1.3(a)(2) to a drug offense case. *See Background* § 1B1.3(a)(2) ("the applicability of subsection (a)(2) does not depend upon whether multiple counts are alleged."); *United States v. Alfonso Blanco,* 888 F.2d 907 (1st Cir.1989) (Guideline § 1B1.3(a)(2)'s cross reference to § 3D1.2(d)'s multiple counts requirement *"is designed only to pick out a certain subset of crimes,* namely the subset of 'fungible item' crimes, such as those involving drugs and money ...") (emphasis supplied). Thus, according to this court and at least six others, the scope of inquiry in drug cases such as the instant one is solely whether "quantities and types of drugs not specified in the act of conviction are ... part of the same course of conduct or common scheme or plan as the offense of conviction." *Background* Guideline § 1B1.3(a)(2). *See generally, United States v. White,* 888 F.2d 490 (7th Cir.1989) (citing cases). *But see United States v. Restrepo,* 883 F.2d 781, 786 (9th Cir.1989) (quantities not specified in act of conviction may not be used in computing base offense level).

Had DEA agents discovered three kilograms of cocaine in Gerante's residence, the above analysis, as well as precedent from at least one other circuit, *see Sarasti,* 869 F.2d at 807, would support the district court's determination that this quantity of drugs should be considered as a part of Gerante's relevant conduct for the purpose of establishing his base offense level. Instead, DEA agents discovered $68,000 in cash, which the district court found Gerante had received in payment for a quantity of drugs, specifically three kilograms. The issue therefore is whether the Guidelines permitted the district court to treat the money found at Gerante's residence as the equivalent of an estimated quantity of drugs for the purpose of holding Gerante accountable for his relevant conduct under § 1B1.3(a)(2).

Fortunately, the Commentary and Application notes to the Guidelines provide specific direction on this issue. Commentary Note 11 to § 2D1.1 states in part that "If the amount seized does not reflect the scale of the offense, [then] *see* Application Note 2 of the Commentary to § 2D1.4." Application Note 2 of the Commentary to § 2D1.4 states that

[w]here there is no drug seizure *or the amount seized does not reflect the scale of the offense,* the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, *the price generally obtained for the controlled substance,* financial or other records, similar transactions in controlled substances by the defendant and the size or capability of any laboratory involved.

*Id.* (emphasis added). Applying the above to the present case, we hold that the district court had the authority to determine that the amount seized from the defendant (4.98 kilograms) did not reflect "the scale of the offense". Using the "price generally obtained" for cocaine ($16,000 to $20,000), the district court had authority to (1) estimate the quantity of cocaine that Gerante had exchanged for the money; and (2) hold Gerante accountable for possessing this quantity of cocaine, provided, of course, that this amount of cocaine was part of the same course of conduct as that of the instant offense. *See* Guideline § 1B1.3(a)(2).

Gerante further argues that even if the Guidelines literally allowed the district court to take such action, this court should vacate the sentence based on the equities. An "inequitable situation" would arise if this court approves of the conversion of money into drugs in such an "unprecedented and convoluted manner."

We disagree with Gerante's view of the equities. At the time of his arrest, Gerante was only .02 kilograms away from possessing five kilograms, which would have

placed him at a base offense level of 32 (the level the district court ultimately concluded was appropriate). The district court's conversion of the $68,000 into an estimated quantity of cocaine in order to place Gerante at a base offense level of 32 was scarcely unreasonable or unfair.

We are warned that if one takes the district court's ruling to its logical extreme, future cases may involve the conversion of cars, houses, and other items into "quantities ... of drugs" for the purpose of determining a defendant's relevant conduct. We need not address the appropriateness of such speculative and remote scenarios, as they are not before us. We hold only that it was fully consistent with the Guidelines to convert the instant drug money into estimated drug quantities.

### D. Minor Participant

■ Gerante contends that the district court never determined whether defendant's sentence should be reduced because he was a "minor participant." We disagree. The transcript indicates that the district court listened to Gerante's arguments but accepted the government's total offense level. We find that the court implicitly rejected defendant's argument when it ruled that it was accepting the government's total offense level.

### III.

In addition to its material finding requirement, Rule 32(c)(3)(D) provides that a "written record of [the district court's] findings and determinations shall be appended to and accompany any copy of the presentence investigation report thereafter made available to the Bureau of Prisons." Fed.R.Crim.P. 32(c)(3)(D). Here, the record is unclear regarding whether the court complied with Rule 32(c)(3)(D)'s mandate that the court attach its finding to the presentence report. Accordingly, we affirm the district court's sentence but remand "so that the trial court may append its findings and determinations as to the controverted material, to the presentence report, as is required under Rule

32(c)(3)(D)." *United States v. Bruckman*, 874 F.2d 57, 65–66 (1st Cir.1989).

SO ORDERED.