914 F.2d 249
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Andre Lamont CHARLTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth BOOTH, Defendant-Appellant.
 No. 89-5666.
 United States Court of Appeals, Fourth Circuit.
 Submitted May 30, 1990.
Decided Sept. 21, 1990.
 
 Appeals from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CR-89-38).
 Francis M. Curnutte, III, Madison, W.Va.; Robert Paul Martin, Lewis, Ciccarello & Friedberg, Charleston, W.Va., for appellants.
 Michael W. Carey, United States Attorney, Amy M. Lecocq, Assistant United States Attorney, Charleston, W.Va., for appellee.
 S.D.W.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before WIDENER and WILKINS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 Andre Charlton and Kenneth Booth were convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846. The district court sentenced Charlton to 63 months of imprisonment and Booth to 78 months of imprisonment. Charlton and Booth appeal the judgments on the grounds that insufficient evidence supported the guilty verdicts and the method for figuring the quantity of cocaine for sentencing purposes was improper. We affirm the judgment against Charlton. We vacate the judgment against Booth and remand for a recalculation of the quantity of cocaine attributed to him.
 
 
 2
 * Booth and Charlton contend that the government failed to prove their participation in distributing cocaine. In their view, the evidence showed that their role in the conspiracy was limited to testing the cocaine. To determine whether the evidence is sufficient to support the guilty verdicts, we must view the evidence in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 3
 Booth, Charlton, and John Dean worked with Freddie Harris, a drug dealer in Charleston, West Virginia. These four men, in various combinations, made a number of trips to Philadelphia to buy cocaine, which they sold in Charleston for a profit.
 
 
 4
 Harris testified that Booth and Charlton sold cocaine for him. Harris advanced cocaine worth $500 to Booth and Charlton and required them to pay him $400 from their sales. Harris witnessed Booth and Charlton distributing drugs in his home. John Dean testified that Charlton told him that he made a lot of money from selling cocaine for Harris. Gladys Johnson testified that Booth and Charlton provided drugs to her, and she saw Booth selling cocaine at her home. This direct evidence that Booth and Charlton distributed in Charleston the cocaine purchased in Philadelphia was sufficient to support the guilty verdicts.
 
 II
 
 5
 For sentencing purposes, the district court found that Charlton was responsible for 460 grams of cocaine and Booth was responsible for 437 grams. Booth and Charlton object to the method for estimating these quantities by converting the cash value of cocaine to the amount of grams. They contend that the trial testimony was not a sufficiently reliable source for determining the cash value of cocaine distributed. In their view, the resulting calculations of quantity were too imprecise to determine accurately their sentences under the Federal Sentencing Guidelines.
 
 
 6
 Because the defendants bought and sold the cocaine by the bag rather than by the gram, the government converted the dollar amounts of purchases and sales of the bags to grams for sentencing purposes. It determined the dollar amount of cocaine purchased in Philadelphia on each trip based on the trial testimony. Where the testimony indicated a range, the government used the lowest figure. For example, Harris testified that $1000 to $3000 was spent on cocaine purchases on the late March and April 15 trips. The government used the $1000 figure.
 
 
 7
 The government determined that the profit ratio on the resale of the cocaine in Charleston was 10 to 1. This figure is supported by Harris' testimony that a bag of cocaine purchased in Philadelphia for $10 would often sell for $100 in Charleston. The price per gram in Charleston was determined to be $297, based on 14 controlled purchases of cocaine in Charleston. The defendants offered no contrary evidence of the profit ratio or the price per gram. The money received from the sales of cocaine was totalled for each defendant and divided by the price of $297 per gram to determine the total grams distributed.
 
 
 8
 The Guidelines explicitly permit the government's method of converting the cash value of cocaine to grams. Application note 2 of Guidelines Sec. 2D1.4 states:
 
 
 9
 Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance. In making this determination, the judge may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
 
 
 10
 (Emphasis added.) The district court properly adopted this method to approximate the quantity of cocaine. See United States v. Gerante, 891 F.2d 364, 368-70 (1st Cir.1989).
 
 
 11
 Although the method is acceptable, there appear to be some errors in the calculations. According to the table in the government's brief, Charlton bought $1500 of cocaine on the April 24, 1988, trip and Booth bought $3000 of cocaine on the same trip. The higher figure of $3000 attributed to Booth is not supported by the record. Dean testified that Charlton and Booth purchased at least $1500 of cocaine on the April 24 trip. The $3000 figure in the table is inconsistent with this testimony and with the government's explanation at the sentencing hearing that it attributed Booth with a $1500 purchase on the April 24 trip.
 
 
 12
 We also note several apparent mathematical errors. The table assigns $3000 of cocaine purchases on the April 27 trip to Booth. Using the 10-1 ratio, Booth should be assigned $30,000 of Charleston sales instead of $20,000.
 
 
 13
 When the dollar amounts of cocaine distributed in Charleston attributed on the government's chart to Booth are totalled, the sum is not $115,000, as the chart states. Oddly enough, however, when the miscalculations of amounts for the April 24 and April 27 trips are corrected, the correct sum is $115,000. The miscalculations are harmless error because the table properly assigns $115,000 of distribution to Booth.
 
 
 14
 But when $115,000 is divided by $297, the price per gram, the quotient is 387 grams, not 437 grams. If 387 grams are used to determine Booth's sentence under the Guidelines, it would make a difference in his base offense level. The district court, basing the sentence on 437 grams, found that the base offense level for Booth was 24. It added 2 levels for obstruction of justice to reach a total offense level of 26. When the figure of 387 grams is used to calculate Booth's sentence, however, the base offense level is 22 and the total offense level is 24. See Guidelines Sec. 2D1.1(c). We remand for recalculation of the amount of grams which Booth distributed in Charleston and for resentencing of Booth, if necessary.
 
 
 15
 The government's table attributes $121,000 of total sales to Charlton. When $121,000 is divided by $297, the price per gram, the quotient is 407 grams, not 460 grams. Because this apparent mathematical mistake makes no difference in Charlton's base offense level of 24 under Sec. 2D1.1(c) of the Guidelines, and Charlton was sentenced to the lowest number of months possible under his total offense level 24, we find the error to be harmless.
 
 
 16
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED