UNITED STATES, Appellee,

v.

**WELLS METAL FINISHING, INC.,**
**Defendant, Appellee.**

**Appeal of John WELLS, Defendant.**

No. 90–1321.

United States Court of Appeals,
First Circuit.

Heard Oct. 2, 1990.

Decided Jan. 4, 1991.

---

Arthur R. Silen with whom Serra, Jordan & Carbone, P.A. were on brief, for appellant.

Richard E. Welch, III, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief for defendant, appellee U.S.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge and ATKINS,* Senior District Judge.

BOWNES, Senior Circuit Judge.

John Wells appeals the enhancement of his sentence and the conditions of supervised release imposed pursuant to the federal sentencing guidelines. Wells and his company, Wells Metal Finishing, Inc., were convicted on December 14, 1989, on nineteen counts of knowingly discharging excessive amounts of zinc and cyanide into the City of Lowell's sewer system between February 24, 1987, and February 28, 1989, in violation of the federal Water Pollution Prevention and Control Act, 33 U.S.C. §§ 1317(b) and (d), 1319(c)(2), 40 C.F.R. § 433.17 and 18 U.S.C. § 2.

On March 22, 1990, the United States District Court for the District of Massachusetts sentenced Wells to fifteen months in custody to be served concurrently on each of the nineteen counts and one year of supervised release conditioned on the payment of a $60,000 fine which had been levied on Wells by the City of Lowell.

The court based Wells' sentence on a presentence investigation report ("PSI Report") prepared by a United States probation officer. According to the PSI Report, Wells and his company systematically discharged into the City of Lowell's sewer system wastewater containing levels of zinc and cyanide vastly in excess of federal pretreatment limits. The excessive zinc and cyanide impaired the waste. treatment process at the Lowell Regional Water and Wastewater Utility.

The Lowell Water Control Department could not specify how much these violations cost the City of Lowell. The record indicates that the city spent from $1,000 to $10,000 per month above normal operating costs to aerate the contaminated water at the wastewater utility during the period that Wells Metal Finishing, Inc. failed to pretreat adequately its wastewater.

To determine the appropriate sentence under the sentencing guidelines, the district court assigned a base level of eight for the offense. *See* U.S.S.G. § 2Q1.2. The court then made a six-level upward adjustment for the ongoing nature of the acts, a two-level upward adjustment for disruption of a public utility, and a two-level downward adjustment for acceptance of responsibility. The resulting adjusted offense level was fourteen. *See* U.S.S.G. §§ 2Q1.2(b)(1)(A), 2Q1.2(b)(3), 3E1.1.[1]

Wells appeals the upward adjustment for disruption of a public utility and his term of supervised release conditioned upon payment of the $60,000 fine. He claims that: (1) the PSI Report did not contain sufficient evidence to support the upward adjustment for disruption of a public utility; (2) the district court failed to make specific findings to support the upward adjustment; (3) the district court abused its discretion by failing to hold an evidentiary hearing on the question of whether a public utility had

---

* Of the Southern District of Florida, sitting by designation.

1. U.S.S.G. § 2Q1.2(b)(3) requires a four-level upward adjustment of the offense level for disruption of a public utility.

The court made a two-level upward adjustment for disruption of a public utility. In so doing, the court apparently relied upon Application Note 7 to § 2Q1.2, which states, "Depending upon the nature of the contamination involved, a departure of up to two levels either upward or downward could be warranted." U.S.S.G. § 2Q1.2(b)(3), comment. (n. 7).

A district court may depart from the sentencing guidelines if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); *see also* United States Sentencing Commission, *Guidelines Manual,* § 1A4(b) at 1.6–1.7 (Nov.1989).

The district court did not find a mitigating circumstance that warranted a downward departure. The government has not objected to the district court's assignment of a two-level rather than four-level upward adjustment to the base offense level under § 2Q1.2(b)(3). We therefore will not disturb the district court's two-level upward adjustment. We remind sentencing judges that it is important to distinguish clearly between adjustments to the base offense level and departures from the guidelines.

been disrupted; and (4) the district court improperly conditioned Wells' term of supervised release on the payment of the fine when the court had reason to know that Wells lacked the resources to pay it.

We review the district court's sentence, including the adjustment to the base offense level, under the "clearly erroneous" standard of review. *United States v. Medeiros*, 897 F.2d 13, 17 (1st Cir.1990) (citing *United States v. Wright*, 873 F.2d 437, 444 (1st Cir.1989)).

### 1. Sufficiency of the Evidence

To satisfy due process, the government must prove facts relied on in sentencing by a preponderance of the evidence. *United States v. Blanco*, 888 F.2d 907, 909 (1st Cir.1989); *see also McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) (in state sentencing case, preponderance standard satisfied due process).

■ Wells claims that the government failed to prove by a preponderance of the evidence that improperly treated wastewater discharged by Wells Metal Finishing, Inc. disrupted a public utility or that a cleanup requiring a substantial expenditure took place. We disagree.

Witnesses at trial testified that the pollution generated by Wells Metal Finishing, Inc. very likely caused serious harm to the Lowell sewage treatment plant: Too much zinc and cyanide could kill beneficial microorganisms in the treatment plant and render its operations much less efficient and therefore much more costly. The presentence report explained:

(12) Excessive amounts of such toxic metals as zinc and dangerous chemicals as cyanide may harm or ruin the biological workings of a municipal sewer treatment works. Thus, the treatment works may inadequately treat the waste before it is discharged into a nearby river. The City of Lowell's sewage treatment works discharges its wastewater into the Merrimack River, a drinking supply for numerous downstream communities. Evidence at trial also revealed that excessive amounts of cyanide may mix with acidic sewer wastes to form highly lethal cyanide gas.

PSI Report at 2. A data summary and analysis from the Lowell Regional Water and Wastewater Utilities stated that zinc concentrations ranging from 0.08 to 0.5 milligrams per liter inhibit the activated sludge processes of the treatment plant. The letter accompanying the report noted that prior to March 3, 1989 (the date the city plugged Wells' bypass pipe designed to circumvent the wastewater pretreatment requirements), the average concentration of zinc entering the Lowell treatment works was .508 mg/1. The report noted a 43.7% reduction in zinc concentration in the total influent at the Lowell treatment plant after Wells Metal Finishing, Inc. ceased operations. Numerous statements in the record, including one from the Lowell Regional Water and Wastewater Utilities, indicated that the treatment plant spent an additional $1,000 to $10,000 per month to compensate for the damage caused by Wells' discharge of zinc and cyanide.

Wells argues that the government provided only general information about the effects of metals and cyanide on wastewater treatment systems. He also contends that evidence regarding financial costs ranging from $1,000 to $10,000 per month was highly speculative: The city should have produced a more exact cost estimate based on overtime worked, additional electric power consumed to aerate the sewage, and loss of efficiency. Prior to sentencing, Wells submitted affidavits from two experts stating that no disruption of a public utility took place: The effluent from Wells' company was too diluted by effluent from other sources to harm the wastewater utility. These experts claimed that the overall composition of wastewater in the city sewer system did not change significantly after Wells' company ceased operations. The government responded to these affidavits by arguing that they were based on erroneous assumptions and calculations.

We cannot find that the district court's decision to enhance Wells' offense level for disruption of a public utility was clearly erroneous. The data report from the Lo-

well Regional Water and Wastewater Utilities, the testimony at trial, the recommendations of the PSI Report, and the questionable validity of Wells' expert affidavits all indicate that the district court had before it adequate evidence to find that Wells' activities disrupted a public utility.

### 2. Failure to Make Specific Findings

Wells argues that the sentencing judge erroneously failed to make adequate written or oral findings on whether a public utility had been disrupted and erroneously failed to make findings on letters and affidavits submitted by the defense prior to the sentencing hearing.

A sentencing judge must "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c) (1988). *See United States v. McDowell*, 918 F.2d 1004, 1012 (1st Cir.1990) (upward adjustment which lacked evidentiary basis in PSI Report was vacated and case remanded because court did not make "reasonably specific findings" for the upward adjustment).

When a defendant alleges a factual inaccuracy in a PSI Report, the district court must make a finding as to the allegation or a determination that no finding is necessary because the matter controverted will not be taken into account in sentencing. Fed.R.Crim.P. 32(c)(3)(D); *see also United States v. Hanono–Surujun*, 914 F.2d 15, 19 (1st Cir.1990) (sentence vacated where sentencing judge relied on sources other than the PSI Report and failed to make specific findings on alleged inaccuracies in PSI Report); *United States v. Lyons*, 898 F.2d 210, 217 (1st Cir.1990) (where record did not indicate whether challenged information in the PSI Report affected sentence, remand for written determination or new sentencing hearing required); *United States v. Levy*, 897 F.2d 596, 598, 599 (1st Cir.1990) (where "literal compliance with Rule 32(c)(3)(D)" not achieved, case remanded); *United States v. Jimenez–Rivera*, 842 F.2d 545, 551–52 (1st Cir.1988) (remand to the sentencing judge for proceedings consistent with Rule 32(c)(3)(D) where record unclear as to whether judge

relied on disputed information in the PSI Report).

A court may make "implicit" findings on disputed factual questions by accepting the government's recommendations at the sentencing hearing. *United States v. Gerante*, 891 F.2d 364, 367 (1st Cir.1989). In *Gerante*, the defendant argued that the PSI Report was factually inaccurate. "At the [sentencing] hearing, each side presented arguments regarding its view of the proper base offense level.... After questioning each side, the court accepted the government's recommended base offense level of 30. In doing so, the court implicitly made the required finding [on the disputed fact]." *Id.; see also United States v. Bruckman*, 874 F.2d 57, 64 (1st Cir.1989) (required finding impliedly made in the denial of motion to correct the presentence report or to delete the contested material).

In the present case, the district judge heard statements from the prosecution and the defense on whether a public utility had been disrupted as alleged in the PSI Report. The judge then briefly explained how he reached the sentence under the guidelines. The sentence reflected a complete adoption of the government's recommendations. The judge completed a memorandum of the sentencing hearing in which he indicated that he had adopted all factual statements contained in the PSI Report and that one disputed fact in the PSI Report was whether a public utility had been disrupted. This notation, combined with the judge's statement at the sentencing hearing and his adoption of the government's recommendations, leads us to conclude that the district court complied with the requirements of Fed.R.Crim.P. 32(c)(3)(D). The district court's findings with respect to the upward adjustment for disruption of a public utility were adequate.

### 3. Lack of Evidentiary Hearing

Wells argues that the district court abused its discretion by not holding an evidentiary hearing on whether a public utility was disrupted. Wells did not request an evidentiary hearing at the sentencing hearing. Due process does not en-

title a defendant to an evidentiary hearing where the defendant has failed to request one. *United States v. Rigby*, 896 F.2d 392, 395 (9th Cir.1990). In the present case, the district court was not obliged to conduct an evidentiary hearing. Even if Wells had requested an evidentiary hearing, the district court could have properly denied the request. Under Fed.R.Crim.P. 32(c)(3)(A), it is within "the discretion of the court" whether to hold a hearing on alleged factual inaccuracies in the PSI Report. *See also Gerante*, 891 F.2d at 367 (decision not to conduct evidentiary hearing reviewed under "abuse of discretion" standard).

### 4. The Fine

Wells claims that the district court improperly conditioned his term of supervised release on the payment of the $60,000 fine due to the City of Lowell. He argues: (1) the fine actually represents restitution to the victim and no basis for restitution was established; and (2) the court abused its discretion in conditioning his supervised release on payment of a fine which the court knew Wells could not pay.

A sentencing court may impose conditions on a term of supervised release "to the extent such conditions are reasonably related to ... the nature and circumstances of the offense...." U.S.S.G. § 5D1.3(b)(1). Where appropriate, the sentencing court may impose a fine and require its payment as a condition of supervised release. U.S.S.G. § 5B1.4(b)(16).

The City of Lowell fined Wells $60,000 for violating his sewer permit. This fine is reasonably related to the offense, and payment of the fine is an appropriate condition of Wells' term of supervised release. The sentencing judge clearly indicated that the fine was not a form of restitution. Wells' claim that the fine does not compensate an ascertainable amount of damages suffered by the City of Lowell is irrelevant.

Aware of Wells' enormous personal debt, the court declined to impose its own fine, although the law authorizes fines of "not less than $5,000 nor more than $50,000 per day" for knowing violations of 33 U.S.C. § 1317. 33 U.S.C. § 1319(c)(2)(A).

We realize that Wells has experienced severe financial difficulties. The appeal on this condition of supervised release, however, is premature; Wells' financial circumstances could improve while he serves his prison term. If he cannot pay the $60,000 fine which he owes the City of Lowell when he begins to serve his term of supervised release, Wells may then ask the district court to modify this condition.

In all respects the sentence imposed by the district court was proper.

*Affirmed.*