USCA1 Opinion

 

 March 15, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2168 UNITED STATES OF AMERICA, Appellee, v. SANTOS OLEA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ Stahl, Circuit Judge. _____________ ____________________ Damon M. D'Ambrosio with whom Martin D. Harris and Martin D. ____________________ __________________ _________ Harris, Esquire, Ltd. were on brief for appellant. ______ _____________ Margaret E. Curran, Assistant United States Attorney, with whom ___________________ Lincoln C. Almond, United States Attorney, and Zechariah Chafee, ___________________ _________________ Assistant United States Attorney, were on brief for the United States. ____________________ March 15, 1993 ____________________ CAMPBELL, Senior Circuit Judge. This is a _______________________ Sentencing Guidelines appeal, in which defendant-appellant Santos Olea contends that the sentencing court erred by considering as relevant conduct quantities of cocaine from sales to which he did not plead guilty, by increasing his sentence for an obstruction of justice, and by denying his request to reduce the sentence for acceptance of responsibility. We affirm the sentence. I. I. Santos Olea was indicted in January 1992 on four counts: Count I charged that on December 12, 1991, Olea and codefendant Alberto Gonzalez distributed cocaine in violation of 21 U.S.C. 841(a)(1); Counts II and III charged that the same occurred on December 16 and December 20, 1991; Count IV charged that from a time unknown until December 20, 1991, Olea and Gonzalez conspired to distribute cocaine in violation of 21 U.S.C. 846. Olea pleaded guilty in the United States District Court for the District of Rhode Island to Count I in return for the dismissal of the three other counts.1 At sentencing in September 1992, the court heard testimony from Detective Gannon of the Providence Police Department, who presented his view of Olea's role in the ____________________ 1. Codefendant Gonzalez, who is not a party here, was indicted on the same four counts and pleaded guilty to the first three. -2- three sales. A government informant, "Luis," arranged for Gannon to make an undercover purchase of cocaine from codefendants Olea and Gonzalez at a shopping center parking lot in Providence. On December 12, 1991, at 11:30 a.m., Olea drove into the parking lot with Gonzalez in the passenger seat, where they met with Detective Gannon inside the car. Luis introduced defendant Santos Olea as "Hector" and Alberto Gonzalez as "Jose." Gonzalez handed a package of cocaine to Gannon (weighing approximately 60 grams). Both Olea and Gonzalez told him to check it out. Gannon gave Gonzalez $1,450 in cash, who counted it and handed it to Olea who also counted it. When Gannon said he would want more cocaine later, Olea said that Gannon could contact him through informant Luis. On December 16, 1991, Gannon called Luis, who in turn called "Hector," and the three men spoke on a three-way telephone line with Luis acting as a Spanish-English interpreter. Gannon said to Hector that he wanted "the same thing," to which Hector replied, "I'm busy today. I'll send my nephew." Hector also said, "Same place, same price, same quantity." Gannon testified that the voice of "Hector" sounded like the voice of defendant-appellant Olea, and that, in his opinion, he was speaking with Olea. Later that day, codefendant Gonzalez arrived alone at the same parking lot at the same time in the same car, which was registered to Olea. -3- Gonzalez delivered 60.7 grams of cocaine to Gannon for the same price. Gonzalez then gave Gannon a phone number to call for more cocaine. The number was listed to the same address where Olea and Gonzalez apparently lived and were eventually arrested. Three more times in the next few days, Gannon spoke to "Hector" on the telephone in the same manner: Gannon called Luis, who in turn established a three-way conversation with "Hector." Luis later told Gannon that he established the phone contact with "Hector" by dialing the phone number given to Gannon by Gonzalez. On the third call, Gannon arranged for a purchase of double the previous quantity of cocaine. Hector told Gannon that his "nephew" would again deliver it at the same place. On December 20, Gonzalez again came to the parking lot in Olea's car and completed the transaction for 123.65 grams. The total weight of the three sales was 245.20 grams. Police subsequently arrested Olea and Gonzalez at the address where the telephone line was registered. Prior to sentencing, Olea wrote a letter to the court apologizing for his involvement in the December 12 drug sale, to which he had pleaded guilty. However, Olea proclaimed that he merely gave Gonzalez a ride to the shopping center on December 12, never touched the money or drugs, and had nothing else to do with Gonzalez's drug -4- dealing. Olea also strenuously denied any connection with or knowledge of the December 16 and December 20 sales, claiming that Gonzalez merely borrowed his car without telling Olea what he was doing. The letter was included in the presentence report. After hearing the evidence at the sentencing hearing and considering Olea's letter and objections to the presentence report, the court sentenced Olea. The court judged Detective Gannon to be a credible witness, and so found that the "Hector" on the telephone was actually defendant Olea and that Olea had actively participated in all three drug sales. Based upon the evidence, the court found that the entire amount of cocaine in the three sales, 245.20 grams, should be considered in calculating Olea's base offense level. The court also found that Olea's letter to the court contained material falsehoods regarding his role in the transactions. After denying any downward adjustment for a minor role in the offense, increasing the offense level by two points pursuant to U.S.S.G. 3C1.1 for obstruction of justice, and denying a two-point reduction for acceptance of responsibility under U.S.S.G. 3E1.1, the court calculated the offense level as 22. With criminal history category I, the applicable sentencing range was 41 to 51 months. The court sentenced defendant to 42 months incarceration and 5 years supervised release, along with other fines and other -5- conditions not relevant here. Olea appeals from his sentence. -6- II. II. Appellant contends that the sentencing court erred in three particulars: (1) it included as relevant conduct under U.S.S.G. 1B1.3 the quantities of cocaine involved in the December 16 and December 20 sales; (2) it found that appellant obstructed justice under U.S.S.G. 3C1.1; and (3) it denied appellant a reduction in sentence for acceptance of responsibility under U.S.S.G. 3E1.1.2 All of appellant's three arguments turn on the extent of his involvement in the three cocaine sales. At the sentencing hearing, the court made a factual finding that appellant was an active participant in the December 12 sale, and was not a mere driver as he claimed. The court also found that appellant arranged for the December 16 and 20 sales, even though codefendant Gonzalez actually delivered the drugs to the parking lot. The court's findings rested in large part on the testimony of Detective Gannon, whom the court found to be a credible witness. Assessment of the credibility of witnesses is for the trier of fact. United States v. Serrano, 870 F.2d 1, 5 (1st Cir. 1989). We _____________ _______ must accept these findings unless clearly erroneous. United ______ States v. Gerante, 891 F.2d 364, 368 (1st Cir. 1989). ______ _______ ____________________ 2. All references to the United States Sentencing Guidelines are to the November 1, 1991, version, which is the version applicable to appellant's case. -7- We do not find clear error. Detective Gannon testified that, on December 12, he met with appellant, identified as "Hector," and that appellant spoke with Gannon about the quality of the cocaine, counted the money, and told Gannon to contact him through Luis if he wanted more drugs. Gannon arranged for each of the two later sales by speaking on the telephone to someone who answered to the name "Hector." Each call took place in the same manner, with Gannon calling Luis, who in turn established a three-way conference call with "Hector" by dialing the phone number supplied to Gannon by Gonzalez. Gannon recognized the voice of "Hector" each time as that of appellant Olea. "Hector" told Gannon to meet his "nephew" at the "same place." After such phone calls, the later two sales took place, under circumstances quite similar to the first sale, with Olea's codefendant similarly involved, using Olea's car. The court was under no obligation to accept Olea's denial of involvement, which it could have found implausible in all the circumstances. We turn next to the district court's application of U.S.S.G. 1B1.3(a),3 concerning relevant conduct. In a ____________________ 3. Section 1B1.3(a) provides: Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross -8- drug distribution case, quantities of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same "course of conduct or part of a common scheme or plan" as the count of conviction. U.S.S.G. 1B1.3 comment. (backg'd.); United ______ States v. DiIorio, 948 F.2d 1, 6 (1st Cir. 1991). We believe ______ _______ that the court reasonably concluded, based on its finding that appellant had participated in all three drug sales, that the relevant amount of cocaine here was the total amount sold in the three separate transactions, the later two transactions being relevant even though appellant did not actually appear in person at the delivery of the drugs. DiIorio, 948 F.2d at 7. Finding no clear error, Gerante, 891 _______ _______ F.2d at 368, we thus reject appellant's challenge to the court's determination of the relevant conduct. ____________________ references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following: . . . (2) solely with respect to offenses of a character for which 3D1.2(d) [Groups of Closely Related Counts] would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction; . . . . -9- Appellant also challenges the obstruction of justice enhancement under U.S.S.G. 3C1.1. Such an enhancement is authorized, inter alia, when a defendant _____ ____ provides "materially false information to a judge or magistrate" or "to a probation officer in respect to a presentence or other investigation for the court." U.S.S.G. 3C1.1, comment. (n.3(f), (h)). The enhancement was properly applied here as appellant was supportably found to have misrepresented two material facts in his letter to the district court (which also was considered by the probation officer in preparing the presentence report): he falsely portrayed himself as "an unwitting dupe" (the district court's words) in the December 12 sale, and falsely stated that he had nothing whatsoever to do with the December 16 and 20 sales. Cf. United States v. Dunnigan, 61 U.S.L.W. 4180, ___ _____________ ________ 4183, 1993 U.S. LEXIS 1779 (U.S. Feb. 23, 1993) (upholding obstruction of justice enhancement under 3C1.1 where defendant committed perjury at trial); United States v. ______________ Akitoye, 923 F.2d 221, 228-29 (1st Cir. 1991) (same; _______ defendant falsely denied any knowledge of drug dealing and characterized codefendant "as the villain of the piece"). While the counts charging these later two sales were dismissed in connection with Olea's plea to Count I, Olea's false assertions that he had not participated in them were "material" for the purposes of U.S.S.G. 3C1.1 because they -10- "would tend to influence or affect" the calculation of his base offense level for his conviction on Count I. U.S.S.G. 3C1.1, comment. (n.5). The sentencing court did not err, therefore, in adding a two-level enhancement for obstruction of justice. Finally, we turn to appellant's challenge to the court's refusal to grant a two-level decrease for acceptance of responsibility. Appellant contends that he was entitled to such a decrease because he pleaded guilty to and expressed some remorse for his crime under Count I. But a reduction for acceptance of responsibility is not "a matter of right." U.S.S.G. 3E1.1, comment. (n.3); United States v. O'Neil, _____________ ______ 936 F.2d 599, 599 (1st Cir. 1991). Except in "extraordinary cases," "[c]onduct resulting in an enhancement under 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct . . . ." U.S.S.G. 3E1.1, comment. (n.4); United States v. Aymelek, 926 F.2d 64, _____________ _______ 69 (1st Cir. 1991). The district court justifiably determined that this was not the extraordinary case. Appellant argues that the court improperly gave weight to his statements denying any responsibility for the two later drug sales that were charged in the dismissed counts. It is true that, under our precedent, appellant was not required to have shown remorse for the dismissed charges. -11- United States v. Perez-Franco, 873 F.2d 455, 463 (1st Cir. _____________ ____________ 1989) ("[A] defendant who has made a plea agreement must accept responsibility solely for the counts to which he is pleading guilty."); see also O'Neil, 936 F.2d at 599. _________ ______ However, the district court did not base its denial of the acceptance of responsibility decrease solely upon defendant's statements relative to the dismissed charges. It noted that he had also lied in asserting that he had only a minor role in the December 12 sale. His refusal to accept appropriate responsibility for that sale, to which he pleaded, alone warranted a finding that he did not accept responsibility. Moreover, the court's supported finding that appellant had lied when denying involvement in the two later sales took appellant well beyond the Perez-Franco safe harbor, which ____________ allows a defendant to remain silent as to the conduct contained in a dismissed charge but does not sanction a defendant's giving of materially false information relative -12- thereto.4 There was no error in the court's refusal to find that Olea had accepted responsibility. III. III. Finding no error in any of the court's rulings below, we affirm appellant's sentence. Affirmed. ________ ____________________ 4. While this proceeding is not controlled by the current Application Note 1(a) to section 3E1.1, that note now articulates the distinction we make. It reads, in pertinent part: Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility[.] U.S.S.G. 3E1.1, comment. (n.1(a)) (as amended, effective Nov. 1, 1992). The district court here indicated that had defendant said nothing about the later sales, instead of falsely denying all involvement, it would have been prepared to grant the decrease for acceptance of responsibility (assuming truthfulness as to Count I). -13-