USCA1 Opinion

 

 March 4, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 93-1972 UNITED STATES, Appellee, v. JOSE QUEZADA, Defendant, Appellant. ________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ___________________ Before Breyer, Chief Judge, ___________ Boudin and Stahl, Circuit Judges. ______________ ___________________ Damon M. D'Ambrosio on brief for appellant. ___________________ Edwin J. Gale, United States Attorney, and Zechariah Chafee, _____________ ________________ Assistant United States Attorney, on brief for appellee. __________________ __________________ Per Curiam. Jose Quezada appeals from his ___________ conviction and sentence. He was indicted on one count of possessing heroin with intent to distribute. He moved to suppress evidence seized from his home, on the grounds that the warrant authorizing the search was not supported by probable cause. After a hearing, the district court denied the motion. Quezada pled guilty and the district court sentenced him to 27 months in prison. In estimating the quantity of heroin for sentencing purposes, the district court relied, in part, on $2,321 in cash found during the search of his apartment. He appeals his sentence and the denial of his suppression motion. Background __________ The presentence report ("PSR") contained the following summary of the facts underlying this case. An informant (known to the Johnston Police Department) told detectives of the Providence Police Department that a man, whom the informant identified from a photograph as Quezada, would be arriving on October, 14, 1992 at 9:00 p.m. at a certain location in a burgundy van containing heroin for sale. The detectives set up watch at the specified location and at 9:00 appellant arrived in a burgundy van. Approaching the van, the detectives saw Quezada throw a gray box, commonly used to store heroin, into the back of the van. The -2- detectives arrested Quezada and seized the box, containing 500 glassine envelopes of heroin, and $206 in cash found in Quezada's pocket. Later that night, the detectives executed a search warrant at Quezada's home. They seized 781 glassine packets of heroin and the following articles commonly used in the packaging of heroin: a coffee grinder, boxes of empty glassine packets (some stamped "shoot to kill"), elastic bands, an ink pad and a "shoot to kill" stamp. They also seized a pager and $ 2,321 in cash. After being informed of his Miranda rights, Quezada signed a statement admitting that _______ the drugs seized from the van and his apartment belonged to him. A subsequent laboratory analysis concluded that the weight of the total amount of heroin seized was between 15.26 grams and 18.22 grams. In November, 1992, Quezada was indicted on one count of possession with intent to distribute heroin in violation of 21 U.S.C. 841(a)(1). In December, 1992, he filed a motion to suppress the drugs seized by the police. Following an evidentiary hearing, the district court denied the motion. On June 15, 1993, appellant pled guilty. For purposes of calculating the base offense level ("BOL"),the probation officer who prepared the PSR converted the cash seized from Quezada's pocket and his apartment ($2,527) into an equivalent amount of heroin (14.17 grams). -3- He relied upon information from the Drug Enforcement Administration that an ounce of heroin was then selling for $5,000. He then added the 14.7 grams to the amounts of heroin seized to arrive at a total weight of 29.43 to 32.39 grams. That amount of heroin yielded a BOL of 18 under U.S.S.G. 2D1.1 (c) (13). 1 The district court adopted the BOL of 18 and then applied a three-point reduction for Quezada's acceptance of responsibility. The PSR included a statement by Quezada admitting that he had committed the offenses charged and acknowledging that "the drugs the police found [at my house] were to sell." The total offense level of 15 and Quezada's criminal history category of 2 yielded an imprisonment range of 21 to 27 months. On August 17, 1993, the district court sentenced appellant to 27 months in prison and five years of supervised release. As a condition of supervised release, the district court ordered appellant, at the completion of his term of imprisonment, to be surrendered to an immigration official for deportation. Discussion __________ Quezada makes three arguments on appeal. First, he argues that the district court erred in denying his motion to suppress. Second, he challenges his sentence as based upon ____________________ 1. The Sentencing Guidelines applied were those in effect on the date appellant was sentenced. -4- illegally-seized evidence. Finally, Quezada contends that it was error for the district court to convert cash into an equivalent amount of heroin for purposes of calculating his sentence. We reject all three arguments. In pleading guilty, Quezada did not reserve the right to appeal from the denial of his motion to suppress. See Fed. R. Crim. P. 11(a)(2) (allowing conditional pleas to ___ be entered, with the consent of the government and the approval of the court, by defendant's reserving in writing the right to appeal a pre-trial motion). "It is clear that a plea of guilty to an indictment is an admission of guilt and a waiver of all non-jurisdictional defenses." Acevedo-Ramos _____________ v. United States, 961 F.2d 305, 308 (1st Cir.) (holding that _____________ by pleading guilty, defendant waived statute of limitations defense), cert. denied, ___ U.S. ___, 113 S.Ct. 299 (1992). ____________ Therefore, Quezada's guilty plea forecloses from review the denial of his motion to suppress. Quezada's guilty plea also bars his Fourth Amendment challenge to his sentence. The Supreme Court has explained the effect of a guilty plea as follows: [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. -5- Tollett v. Henderson, 411 U.S. 258, 267 (1973). By pleading _______ _________ guilty, appellant waived the right to assert his Fourth Amendment claim for the purpose of attacking his sentence. See United States v. Smallwood, 920 F.2d 1231, 1240 (5th ___ _____________ _________ Cir.) (holding that, following the district court's denial of appellant's motion to suppress and appellant's subsequent guilty plea, appellant "cannot resuscitate fourth amendment concerns solely to challenge the consideration of evidence at sentencing."), cert. denied, ___ U.S. ___, 111 S.Ct. 2870 _____________ (1991). Quezada contests on appeal, as he did at his sentencing hearing, the government's conversion of the cash found in his apartment into an equivalent amount of heroin for purposes of calculating appellant's BOL. He argues that there was insufficient evidence that the cash belonged to him, given that he shared the apartment with others and the PSI failed to indicate where in the apartment the cash was found. Appellant also contends that there was insufficient proof to support the probation officer's assertion that the cash was "the direct result of previous narcotics trafficking." He cites his employment at an auto body shop at the time of the search in support of his argument that there were other plausible sources of the cash. For the first time on appeal, Quezada contests the conversion ratio used by the probation officer and adopted by -6- the district court (one ounce of heroin equals $5,000). Having failed to object below to the conversion ratio used in the PSR, however, Quezada is barred from raising this issue for the first time on appeal. United States v. Jackson, 3 ______________ _______ F.2d 506, 511 (1st Cir. 1993). "Pursuant to U.S.S.G. 1B1.3(a)(2), a defendant is responsible for all acts which 'were part of the same course of conduct or common scheme or plan as the offenses charged.'" United States v. Figueroa, 976 F.2d 1446, 1461 ______________ ________ (1st Cir. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1346 ____________ (1993). In United States v. Gerante, 891 F.2d 364, 369 (1st _____________ _______ Cir. 1989), we held that Application Note 2 of the Commentary to U.S.S.G. 2D1.4 authorizes a district court to convert cash into a drug amount for the purpose of calculating a base offense level, provided that the cash "represents drug transactions that are part of the same course of conduct as the instant offense." United States v. Jackson, 3 F.2d at 510 _____________ _______ (citing Gerante, 891 F.2d at 369). _______ A finding by the district court that cash represents drug transactions that are part of the same course of conduct as the charged offense must be supported by a preponderance of the evidence. United States v. Jackson, 3 _____________ _______ F.3d at 510. At the sentencing hearing, appellant challenged, as unsupported by a preponderance of the evidence, the PSI's assertion that the cash seized from his -7- apartment "was the direct result of narcotics trafficking" and, therefore, "relevant conduct" for the purposes of determining the BOL. As required by Fed. R. Crim. P. 32(c)(3)(D), the district court made a finding as to the alleged inaccuracy contained in the PSI. The district court found as follows: [the seizure of heroin and numerous articles used in the packaging of heroin and the defendant's admission that the drugs found were his and that they were there to sell] certainly indicates that this defendant was heavily involved in the heroin trafficking business and I join hands with the Probation Officer in the statement that he made that he stands firm in his belief that the $2,527 seized from the defendant's person and his own apartment are the proceeds of previous heroin trafficking, and, therefore, it's considered relevant conduct for the purpose of determining the guideline range. The district court also stated that, with respect to the source of the cash and its connection to Quezada, "I do not attach much significance to the defendant's argument." These findings of fact by the district court are reviewable only for clear error. See United States v. ___ ______________ Jackson, 3 F.2d at 510; United States v. Gerante, 891 F.2d at _______ _____________ _______ 368. We cannot say that the sentencing judge committed clear error in concluding that the government met its burden of proving by a preponderance of the evidence that the cash seized represented proceeds of previous heroin trafficking. See United States v. Sepulveda, Nos. 92-1362, et al., slip ___ _____________ _________ -8- op. at 81 (1st Cir. Dec. 20, 1993) (holding that "the government presented abundant evidence of Johnson's narcotics trafficking, . . . , and the volume of business transacted justified the court's illation that the sums seized were connected to her drug dealings."). Quezada argued at his sentencing hearing that the evidence suggested that there were others living at his apartment, including a woman, children and someone named Rodriguez. Quezada did not produce any such person as a witness at the hearing, however, to testify that the money was theirs. Nor did appellant offer any evidence to support his contention that he was employed at an auto body shop at the time of his arrest. The probation officer was unable to verify the alleged employment. Appellant did not provide any proof of employment, (such as paycheck stubs) and relied solely on a statement by his wife that he had been so employed. Moreover, the district court would have been justified in concluding that legitimate employment would not necessarily explain the presence of large amounts of cash in Quezada's apartment. As in United States v. Jackson, 3 F.2d _____________ _______ at 511, the sentencing court here "rejected the various alternative sources of the currency and determined that the funds were drug proceeds." It did not commit clear error in making that determination. -9- The conviction and sentence are affirmed pursuant to Loc. R. 27.1. -10-